**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wesley R. McKINNEY, Defendant-Appellant.**

**No. 86–1269.**

United States Court of Appeals, Tenth Circuit.

June 25, 1987.

Judith S. Brune of J. Brune & Associates, Inc., Tulsa, Okl., for defendant-appellant.

Layn R. Phillips, U.S. Atty. (Frank H. McCarthy, Asst. U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Before BARRETT, BALDOCK and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

In the first count of a thirty-two count indictment, Wesley R. McKinney was charged with conspiring with one James R. Ross to commit offenses against the United States in violation of 18 U.S.C. §§ 371, 656, and 657. In counts two through thirty, McKinney was charged with misapplication of federally insured bank funds by means of check kiting, each count being based on a separate transaction, in violation of 18 U.S.C. §§ 656 and 2. The thirty-first count charged McKinney with misapplication of bank funds obtained on a line of credit granted McKinney's children's trust, McKinney allegedly using the monies thus obtained to refurbish his yacht, the "Lord Jim," in violation of 18 U.S.C. §§ 656 and 2. The thirty-second, and last, count charged McKinney with causing false representations to be made to the Federal Deposit Insurance Corporation concerning loans made to an entity known as Mercury Capital Associates, in violation of 18 U.S.C. §§ 1007 and 2. A jury convicted McKinney on all thirty-two counts, and he now appeals his several convictions, and the sentences imposed thereon. We affirm.

The background facts need not be set forth in great detail. McKinney was a prominent businessman in Oklahoma, serving as chairman of the Board of Republic Bank & Trust Co. He also served as chairman of the Board and chief executive officer of several energy related companies,

referred to as Petra Companies. As the oil and gas market declined, the Petra Companies ran into financial troubles. To meet its payroll, the evidence indicated that Petra became involved in a check kiting scheme of considerable proportions involving Petra, Republic Bank & Trust, and several other banks and savings and loan associations.

McKinney's first ground for reversal is that the evidence is legally insufficient to support a conviction on any of the thirty-two counts. We do not agree.

The first thirty counts relate to a misapplication of bank funds as the result of a check kiting scheme in violation of 18 U.S.C. §§ 2, 371, 656, and 657. A key government witness was James R. Ross, the unindicted co-conspirator. Ross was the former senior vice-president of Petra, and he testified in great detail concerning the check kiting scheme designed to keep Petra afloat, which scheme, according to Ross, was operated with McKinney's knowledge, authorization and direction. According to Ross, the scheme escalated until it required writing 50 worthless checks a day to cover the float on insufficient funds totaling about $5,000,000. Ross' testimony was corroborated by other witnesses.

On appeal McKinney argues that because he paid interest on the uncollected funds at Republic Bank, these transactions could not constitute a misapplication of funds. He further argues that as he was not connected with any of the other victim banks as required by 18 U.S.C. §§ 656 and 657,[1] evidence of transactions with these other banks could not support his conviction.

In considering a scheme of this sort, the court should look at the total picture to find the substance of the transaction. *United States v. Harenberg*, 732 F.2d 1507 (10th Cir.1984). While simple overdrafts by themselves may not rise to the level of misapplication of bank funds, the evidence

---

1. Sections 656 and 657 covers misapplications of bank funds by officers, directors, agents or employees of or those connected with the bank.

presented in this case showed a complicated scheme wherein a series of worthless checks were systematically written, none of which had any monetary substance. Republic Bank was unquestionably a victim of the scheme despite the fact that interest may have been paid on the uncollected funds. Evidence received concerning Petra's transactions at the other victimized banks was relevant as it showed the scope and complexity of the check kiting scheme. In light of the testimony presented at trial, we conclude a reasonable jury could have found McKinney guilty beyond a reasonable doubt of conspiring to, and misapplying, the bank funds as charged.

■ We believe the evidence is also sufficient to support a conviction on counts thirty-one and thirty-two. Deceiving a bank as to the true beneficiary of a loan is a violation of 18 U.S.C. § 656. *United States v. Twiford*, 600 F.2d 1339 (10th Cir. 1979). The government's evidence showed that McKinney directed his secretary, who at that time was the sole trustee of his children's trust, to establish a line of credit for the trust at the Republic Bank. McKinney then directed her to borrow on this line of credit, with the borrowed funds thereafter going to the refurbishing of the "Lord Jim." Although the line of credit and loan was approved by the Board of Directors of the Republic Bank, they were not aware the proceeds were to go to refurbish McKinney's yacht.

The evidence concerning the thirty-second count came from a government witness who testified that his representations to FDIC concerning the status of proceeds to be used to pay off a loan were at the direction and approval of McKinney and for the benefit of Petra. Contrary to defendant's contention, we believe the intentional deception as to the status of the loan to be well within 18 U.S.C. § 1007, which prohibits knowingly making a false statement to the FDIC for the purpose of influencing the action of the FDIC.

■ As stated, Ross was a key government witness. He testified at great length concerning his relationship with McKinney, and detailed what McKinney said and did in connection with the check kiting scheme. On appeal, counsel argues that it was error to permit Ross to testify until a conspiracy between Ross and McKinney was established by other evidence. We do not agree with this contention. We are not here concerned with hearsay statements of one conspirator being used against a fellow-conspirator. Rather, Ross was simply testifying as to what McKinney, the defendant, said and did. That is eye witness testimony and admissible in this case as admissions of a party-opponent under Fed.R. Evid. 801(d)(2)(A).

At trial, the district court refused to give an instruction tendered by McKinney relating to "good faith" as a defense, and, on appeal, counsel asserts that such is reversible error. The instruction, tendered and denied by the district court, reads as follows:

> "No financial loss suffered by the banks and the defendant's acts in protecting the banks from any loss may be considered by the jury to prove that the defendant lacked the requisite intent to defraud and injure and that the defendant acted in good faith, which ordinarily is a complete defense to a charge under 18 U.S.C. § 656."

■ The foregoing instruction was denied by the district court on the ground that it was covered by other instructions, and that, to a degree, the proffered instruction contradicted other instructions given the jury. We are in general accord. In the first place, the instruction itself, from a purely semantical standpoint, is difficult to follow. It would seem to say, for example, that a financial loss suffered by a bank may *not* be considered by the jury to prove that McKinney lacked the requisite intent to defraud and that he acted in good faith. We can't track that verbiage. In any event, requested instructions that are misstatements of the law or are repetitious are correctly refused. *United States v. Stoddart*, 574 F.2d 1050 (10th Cir.1978). A charge under 18 U.S.C. § 656 is complete when the misapplication takes place, and the fact that the bank does not suffer a loss, or, if the bank does suffer a loss and

the defendant later offers repayment, does not negate an earlier intent to defraud. *United States v. Tokoph*, 514 F.2d 597 (10th Cir.1975). We find no error in refusing to give the tendered instruction.

After the jury had commenced its deliberation, the district court gave the jury two additional instructions embodying the so-called *Allen* charge. On appeal, counsel argues that these additional instructions were "coercive" and, under *United States v. Blandin*, 784 F.2d 1048 (10th Cir.1986), could *only* be given at the time when the general instructions were given the jury, and not after the jury commenced its deliberation.

The case was submitted to the jury on Friday, December 13, 1985, at approximately 1:30 p.m. The jury deliberated for about three hours without reaching any verdict and was then excused to return on Saturday morning, December 14, 1985, at 9:00 a.m. to resume deliberation. When the jury returned on Saturday morning, the district judge advised the jury that if it had not unanimously agreed on a verdict on all counts by 2:30 p.m., he proposed to receive any unanimous verdict it might have reached on any one, or possibly more, of the counts, and that the jury would then resume deliberation on the remaining counts. Defense counsel objected to receiving only a partial verdict.

At 2:30 p.m. the jury advised the district judge that it had unanimously agreed that McKinney was guilty on counts one and thirty-two, but had not yet reached a unanimous verdict on the remaining thirty counts. The district court accepted the guilty verdicts on counts one and thirty-two and ordered the jury to resume its deliberation on the remaining thirty counts. The jury did so until 4:30 p.m. when it was excused for the weekend.

On Monday, December 16, 1987, the jury resumed its deliberation. At approximately 1:20 p.m., the jury returned a unanimous verdict of guilty on count thirty-one, but advised the court that it was unable to agree on a unanimous verdict on the remaining twenty-nine counts. At this point, over objection, the district court gave the jury a full-fledged *Allen* instruction.[2] The jury again resumed its deliberation, and an hour and twenty minutes later returned a unanimous verdict that McKinney was guilty on the remaining twenty-nine counts.

■ On appeal, counsel does not argue that it was error for the district court to receive a partial verdict. Receipt of a partial verdict was approved in *United States v. Ross*, 626 F.2d 77 (9th Cir.1980). Counsel does argue, however, that the instruction to the jury on Saturday morning and Monday afternoon were "coercive." We do not agree. We think the effect of these instructions was "neutral." The jury was advised, for example, that no individual juror was ever required to yield a conscientious conviction, which means, to us, that a juror may adhere to his or her personal conviction, if he or she believes it to be right, whatever that conviction might be, i.e., guilty or not guilty. We find the challenged instructions to be of the type heretofore approved by this court. *See*, e.g., *United States v. Dyba*, 554 F.2d 417 (10th Cir.1977), *cert. denied*, 434 U.S. 830, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977); *Munroe v. United States*, 424 F.2d 243 (10th Cir.1970).

■ Counsel also argues that under *United States v. Blandin*, 784 F.2d 1048 (10th Cir.1986), an *Allen* instruction may *never* be given once a jury has commenced its deliberation. In arguing for a *per se* rule, counsel overreads *Blandin*. *Blandin*, incidentally, was filed after the trial of this case. In pre-*Blandin* cases, we have said that it is generally preferable that any *Allen* instruction be given at the time the general instructions are given a jury. *See Munroe v. United States*, 424 F.2d 243 (10th Cir.1970); *United States v. Wynn*,

---

**2.** The *Allen* charge given by the court followed a pattern instruction used in the Fifth Circuit. Summarized, the *Allen* charge noted the importance and expense of the trial. It then went on to instruct that each dissenting juror ought to consider whether a doubt in his mind was reasonable, but admonished the jurors not to yield any conscientious convictions they may have as to the weight or the effect of the evidence. The charge also reminded the jurors that they must acquit the defendant if the evidence failed to establish guilt beyond a reasonable doubt.

415 F.2d 135 (10th Cir.1969), *cert. denied,* 397 U.S. 994, 90 S.Ct. 1133, 25 L.Ed.2d 402 (1970); *United States v. Winn,* 411 F.2d 415 (10th Cir.1969), *cert. denied,* 396 U.S. 919, 90 S.Ct. 245, 24 L.Ed.2d 198 (1969). Those are the cases relied on in *Blandin.* We adhere to the preferred course of procedure, but decline to read *Blandin* as holding that an *Allen* charge can never be given after a jury has commenced deliberation. Certainly *Blandin* does not state that this is a *per se* rule, and we decline to so hold. Implicit in *Munroe, Wynn,* and *Winn,* the cases relied on in *Blandin,* is that although it is a preferred rule of procedure that an *Allen* instruction be given the jury at the same time as other instructions, it is *not a per se* rule. *Allen*-type cases must be reviewed on a case-by-case basis to determine the coercive effect of the instruction.

The remaining grounds for reversal have been examined and none is meritorious. They are: (1) pre-trial publicity required a change of venue (venue was moved from the Northern District of Oklahoma to the Western District of Oklahoma, but counsel argues the case should have been transferred outside of Oklahoma, if not farther); (2) failure to sequester the jury (no request to sequester was made, and, in any event, sequestration, or no, is a discretionary matter with no abuse shown on appeal); (3) denial of a motion for a continuance (also a discretionary matter for the district court; here defendant had over five months to prepare and received numerous continuances); (4) failure of court to recuse (motion to recuse first made after conviction at a time when defendant sought release pending appeal and is therefore untimely; also defendant did not show evidence suggesting the judge's impartiality might be reasonably questioned, *see United States v. Gigax,* 605 F.2d 507 (10th Cir.1979)); (5) use by government of summary charts (another discretionary matter for a trial court); (6) improper argument in closing wherein prosecution, *inter alia,* characterized McKinney as a "crook" (no contemporaneous objection and the description, if error, did not rise to the level of plain error); (7) reference to possible commission of other crimes (evidence designed in part to show defendant's knowledge of the kiting scheme and therefore admissible under Fed.R.Evid. 404(b)); and (8) replaying, at jury's request, a portion of the testimony of a government witness (discretionary with a trial court).

As indicated, McKinney sought release pending appeal. The district court denied this request. McKinney renewed that request with this court. Another panel of this court declined to rule on the request to be released on bond pending appeal, and deferred ruling until the case was heard on its merits. Accordingly, at this time the motion for release on bond is denied.

Judgment affirmed.