**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ricky E. BUTLER,**
**Defendant–Appellant.**

No. 89–5066.

United States Court of Appeals,
Tenth Circuit.

June 12, 1990.

argues that: (1) the magistrate erred in overruling his motion to suppress; (2) the magistrate erred by failing to grant a mistrial on the basis of prosecutorial misconduct; (3) the Government's failure to provide Jencks Act material, *see* 18 U.S.C. § 3500, warrants reversal; and (4) the magistrate's supplemental instruction given after the jury had begun deliberations warrants reversal. We affirm.

## I.

During a routine customs inspection of incoming mail at the Dallas/Fort Worth Airport on October 29, 1987, a drug detection dog "alerted" to a package from West Germany addressed to Ricky Butler in Hominy, Oklahoma. United States customs officials opened the package and found a wooden jewelry box containing a letter and several pieces of costume jewelry. The box had a false bottom, under which there were 45 grams of hashish wrapped in plastic.

Customs officials rewrapped the package, transported it to Oklahoma, and arranged to deliver the package to Butler under controlled conditions. After receiving a notice from the Hominy post office stating that the package could be picked up, Butler retrieved the package from the post office while under the surveillance of federal and state law enforcement officials. Hominy Police Chief Charles Crawford and Agent Grady Lowrey of the Oklahoma Bureau of Narcotics and Dangerous Drugs (OBNDD) followed Butler as he drove first to a hardware store, then to his mother's house, and finally to two more residences. At his mother's house, Butler entered the house with the package. There was some conflict in the testimony regarding how long Butler remained in the house, but the magistrate found that Butler remained in the house five to ten minutes before exiting with "something," which was in accord with Agent Lowrey's testimony. While in the hardware store and the other two residences, Butler left the package in his car.

Everett R. Bennett, Jr. of Frasier & Frasier, Tulsa, Okl., for defendant-appellant.

Tony M. Graham, U.S. Atty., and Susan W. Pennington, Asst. U.S. Atty., Tulsa, Okl., for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and SAFFELS, District Judge.*

TACHA, Circuit Judge.

Ricky E. Butler appeals his conviction for possession of hashish, a misdemeanor in violation of 21 U.S.C. section 844. A jury sitting before a United States magistrate handed down the verdict, and Butler appealed to the United States District Court, which affirmed his conviction. Butler now

* The Honorable Dale E. Saffels, District Judge, United States District Court for the District of Kansas, sitting by designation.

Agent Lowry arrested Butler when he reached the third residence. The authorities seized the jewelry box, which was on the front seat of Butler's pick-up truck. The jewelry box had been taken out of its mailing package. At the Hominy Police Department, the authorities searched the jewelry box and found that the the hashish was still under the false bottom of the jewelry box and that the jewelry and letter were missing.

During questioning, Butler admitted that while he was stationed with the United States Armed Forces in West Germany he discussed smuggling contraband into the United States following his discharge from the Armed Forces.

At trial, Butler admitted part of the prior discussion involving smuggling, but he denied that the conversation proceeded any further and he denied knowing that the jewelry box contained hashish.

## II.

While Butler concedes that the search and seizure of the jewelry box at the Dallas/Fort Worth Airport was valid under the "border exception," *see United States v. Ramsey,* 431 U.S. 606, 616–22, 97 S.Ct. 1972, 1978–82, 52 L.Ed.2d 617 (1977), he argues that the fourth amendment, *see* U.S. Const. amend. IV, to the U.S. Constitution barred the second search and seizure of the jewelry box following his arrest. Butler contends that the magistrate erred by denying his pre-trial motion to suppress evidence from the second search. We disagree.

■ When we review a denial of a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous. *United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir.), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). The ultimate determination of reasonableness under the fourth amendment is a conclusion of law, *United States v. McKinnell,* 888 F.2d 669, 672 (10th Cir.1989), which we review de novo, *In re Ruti-Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir.1988).

The fourth amendment bars "unreasonable searches and seizures." U.S. Const. amend. IV. As a general rule, a search and seizure becomes reasonable only if it is conducted pursuant to a valid search warrant. *See New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). There are, however, several exceptions to the warrant requirement. The government argues that the second seizure and search of the jewelry box was valid under two of these exceptions: searches incident to arrests, *see id.* at 457–63, 101 S.Ct. at 2862–65, and "controlled deliveries," *see Illinois v. Andreas,* 463 U.S. 765, 769–73, 103 S.Ct. 3319, 3323–25, 77 L.Ed.2d 1003 (1983).

■ We reject the government's contention that, pursuant to *Belton,* the subsequent search of the jewelry box at the Hominy Police Department was valid because the authorities were acting pursuant to Butler's arrest. *Belton* holds that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton,* 453 U.S. at 460, 101 S.Ct. at 2864 (footnotes omitted). A lawful custodial arrest justifies not only the warrantless search of the person arrested but also the immediately surrounding area. It follows that if the police conduct a search that is not contemporaneous to arrest, a warrant will be necessary. Thus, the *Belton* Court reaffirmed *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), which held that the warrantless search of a footlocker conducted more than an hour after federal agents had taken it into their exclusive control, and long after the defendants were safely in custody, was not a search incident to arrest; therefore, a warrant was necessary for a valid search. *See Belton,* 453 U.S. at 457–62, 101 S.Ct. at 2862–65. *See also Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) (search incident to arrest invalid if it "is remote in time or place from the arrest").

We conclude, based on *Chadwick*, that the warrantless search of the jewelry box at the Hominy Police Department, conducted after Butler was safely in custody, was not a valid search incident to arrest. However, we find that the seizure of the jewelry box was incident to arrest and, therefore, proper under the fourth amendment.

■ We turn next to the government's argument that the second search was valid because, like the search in *Illinois v. Andreas*, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), it followed a "controlled delivery." In *Andreas*, a customs inspector discovered marijuana concealed inside a three-foot-wide wooden table, which was shipped in a locked, metal container. After the table and container were resealed, a special agent of the Drug Enforcement Administration and a Chicago police inspector delivered the container to the addressee. At the suspect's request, the officers left the container in the hallway outside the suspect's apartment. The suspect then pulled the container into the apartment and the police inspector left to obtain a search warrant for the premises. Meanwhile, the special agent remained in the building but did not keep the apartment door under constant surveillance. Between 30 and 45 minutes after the delivery, and before the police inspector returned with a warrant, the suspect left his apartment carrying the container and the special agent arrested him. At the police station, the officers reopened the container without a warrant and found the marijuana. *See Andreas*, 463 U.S. at 767–69, 103 S.Ct. at 3322–23.

The *Andreas* Court noted that if an inspection by the police does not intrude upon a legitimate expectation of privacy, there is no "search" for purposes of the fourth amendment. The Court then concluded that there can be no protected privacy interest in contraband in a container once the police have lawfully opened it and identified its contents. Resealing the package and delivering it to the addressee under controlled conditions does not revive the extinguished privacy rights. *See id.* at 771, 103 S.Ct. at 3324.

The Court recognized that the police cannot always achieve perfectly controlled deliveries. Conducting a controlled delivery surveillance undetected is "likely to render it virtually impossible for police so perfectly to time their movements as to avoid detection and also be able to arrest the owner and reseize the container the instant he takes possession." *Id.* at 772, 103 S.Ct. at 3324. At some time during the surveillance, the police may lose sight of the container they are trailing. During this gap in observation, it is possible that the container will be put to other uses. For example, the suspect might remove the contraband or place other items inside the container. *See id.* However, the mere possibility that the contents of the container have changed is insufficient to create a protected privacy interest in the privacy of the container. *See id.*

The question for the reviewing court is whether "there is a substantial likelihood that the contents of the container have been changed during the gap in surveillance." *Id.* at 773, 103 S.Ct. at 3325. This is an objective standard that turns on "all the facts and circumstances, including the nature and uses of the container, the length of the break in surveillance, and the setting in which the events occur." *Id.* at 772, 103 S.Ct. at 3325. Based on this standard, the *Andreas* Court concluded that: "The unusual size of the container, its specialized purpose, and the relatively short break in surveillance combine to make it substantially unlikely that the respondent removed the table or placed new items inside the container while it was in his apartment." *Id.* at 773, 103 S.Ct. at 3325.

In our application of *Andreas* to this case, we stress several factors. The small, unusual size of the jewelry box decreased the probability that Butler placed other objects in the box while he was inside his mother's house. Furthermore, the magistrate found that the jewelry box was outside of police observation for five to ten minutes, far less than the thirty to forty-five minutes that the police in *Andreas* lost sight of the container. Finally, while Butler, unlike the suspect in *Andreas*, discard-

ed the shipping container prior to the police seizure, we reject any argument that this action made it substantially likely that the contents of the jewelry box were changed. It is at least equally plausible that Butler discarded the packaging material in order to ascertain whether this package contained the jewelry box. Moreover, because the jewelry box was designed for the specialized purpose of transporting contraband, it was likely that the jewelry box contained contraband as long as Butler still possessed it. The combination of all these factors lead us to conclude that it was not substantially likely that Butler changed the contents of the jewelry box during the break in surveillance.[1] We hold that the second search of the jewelry box at the Hominy Police Department was not barred by the fourth amendment. The magistrate did not err in denying Butler's motion to suppress.

### III.

◼ At trial, Butler twice moved for a mistrial. Each time, the magistrate denied the motion and gave a curative instruction. Butler now argues that the magistrate erred in denying his motions for mistrial. We disagree.

On the first day of trial, Butler objected to the prosecutor's questioning of a witness regarding the substance of any prior conversations between the witness and Butler relating to comparisons between European and American hashish. After Butler's objection and before the witness could answer the question, the prosecutor told the judge that her question went "directly to intent, to willingness to deal with drugs." The judge instructed the jury to "disregard any remarks regarding dealing in drugs. The charge before this Court which you are to consider is the question of whether or not the Defendant knowingly possessed a

schedule one controlled substance, not whether or not he was a dealer or dealing per se. Any such remark must be disregarded by you."

On the next day of trial, the prosecutor asked Butler's mother if she knew whether or not Antwan Humphreys had been arrested for violating the drug laws. At the bench conference following Butler's objection, the prosecutor stated that Humphreys resided at the house where the police arrested Butler and that the government had evidence that Humphreys had been arrested for drug offenses. The magistrate ruled that he would not permit the question unless the government could show a link between Humphreys and Butler. The magistrate then admonished the jury to: "disregard any remarks of other persons who may be alleged by the implication of the question ... I remind you again of my earlier instruction. A question is not evidence to have been involved in other crimes. Such issues are not before us and may not be considered by you."

We review the magistrate's refusal to grant a mistrial for an abuse of discretion. *See United States v. Day,* 830 F.2d 1099, 1106 (10th Cir.1987). We find no abuse of discretion. Both of the prosecutor's improper comments were followed by the magistrate's curative instructions. Moreover, the magistrate refused to allow the witnesses to answer the improper questions. We hold that the magistrate properly denied Butler's motions for mistrial.

### IV.

◼ We next address Butler's argument that the government failed to release Jencks Act[2] material. At trial, the government called Police Chief Crawford to the stand to testify to Butler's interview following his arrest. Prior to the police

---

**1.** Because *Andreas* prescribes an inquiry into objective factors ascertainable by the police officer before he opens the package in question, *see Andreas,* 463 U.S. at 772–73, 103 S.Ct. at 3324–25, we do not consider relevant the discovery, following the opening of the box, that the letter and the jewelry were missing. Thus, we need not decide whether removing these non-contraband items from the package renew Butler's

privacy interest in the remaining contents of the package.

**2.** The Jencks Act is codified at 18 U.S.C. § 3500. Its provisions are also included, without substantial change, in Federal Rule of Criminal Procedure 26.2.

chief's testimony, the government gave defense counsel page two of a two page report that the police chief had made following the interview. Defense counsel requested page one of the report and the prosecutor stated that she could not honor this request because she had never possessed page one of the report. The prosecutor stated that because of her failure to locate the first page of the report, she would only question Crawford about the second page of the report.

Butler argues that the government violated an implied duty under Rule 26.2(a)[3] of the Federal Rules of Criminal Procedure to preserve potential Jencks Act material. Butler further alleges that the prosecutor's failure to produce the first page of the report possibly prejudiced him. Butler contends that the prosecutor could not be certain that she successfully limited her questioning of the police chief to subjects that were not discussed in the first page of the report if the prosecutor never saw the first page of the report.

We need not decide whether Rule 26.2 imposes a duty on the government to preserve possible Jencks Act material because we conclude that even if the government's failure to preserve page one of the report was a violation of the Jencks Act, it did not result in any prejudice to Butler. *See United States v. Winner*, 666 F.2d 447, 447–49 (10th Cir.1981) (suggesting that courts must apply harmless error analysis to violations of the Jencks Act). The attorney representing Butler admitted both at trial and at the motion for bond pending appeal that he possessed the first page of the report. We hold that the failure of the government to produce page one of the police chief's report does not warrant reversal of Butler's conviction.

## V.

■ Butler next argues that the supplemental *Allen* instruction in this case was coercive and warrants reversal. We disagree.

After approximately nine hours of deliberations, the jury sent the following note to the magistrate: "The jury has been polled. All have voted to state that we cannot reach a verdict of guilty or not guilty." The magistrate then gave the following *Allen* instruction:

Members of the Jury, I'm going to ask that you continue your deliberations in an effort to agree on a verdict and dispose of this case, and I have a few additional comments I would like for you to consider as you do so.

First, this is an important case. The trial has been expensive in time, effort and money to both the defense and the prosecution. If you should fail to agree on a verdict, the case is left open and may be tried again. Obviously another trial would only serve to increase the cost to both sides, and there is no reason to believe that the case would [be] tried again by either side better or more exhaustively than it has been tried before you. Any further jury must be selected in the same manner and from the same source as you were chosen, and there is no reason to believe that the case would go to 12 men and women more conscientious, more impartial or more competent to decide it, or that more or clearer evidence could be produced.

If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one, since it appears to make no effective impression on the minds of the others. On the other hand, if a majority or even a lessor number of you are for acquittal, the other jurors ought seriously to ask themselves again and most thoughtfully, whether they do not have a reasonable doubt, the correctness of a judgment which is not shared by several of their fellow jurors and whether they should distrust the weight and sufficiency of the

---

**3.** Rule 26.2(a) of the Federal Rules of Criminal Procedure provides in pertinent part that upon the motion of an opposing party, the court shall order the party calling a witness to produce "any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified." Fed.R.Crim.P. 26.2(a).

evidence which failed to convince several of their fellow jurors beyond a reasonable doubt. Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence, but remember also that after full deliberation and consideration of the evidence in the case, it is your duty to agree on a verdict if you can do so without surrendering your conscientious conviction.

You must also remember if evidence in the case fails to establish guilt beyond a reasonable doubt the accused should have your unanimous verdict of not guilty.

Two hours later the jury returned a verdict of guilty and presented a note to the magistrate, which read: "We the jury thank you, your Honor, for your further instructions and comments, without which we would have failed."

In our review of *Allen* instructions, we have urged caution in their use. "If the instruction is given at all, it should be incorporated into the body of the court's original instructions to the jury. It should not be given during the course of deliberations." *United States v. Blandin*, 784 F.2d 1048, 1050 (10th Cir.1986). However, "although it is a preferred rule of procedure that an *Allen* instruction be given the jury at the same time as other instructions, it is *not a per se* rule." *United States v. McKinney*, 822 F.2d 946, 951 (10th Cir. 1987) (emphasis in original). To ascertain whether an *Allen* instruction is permissible, we conduct a case by case determination to determine whether the taint of coercion was present. *See United States v. Porter*, 881 F.2d 878, 888 (10th Cir.1989).

In our determination of whether the supplemental *Allen* instruction in this case is proper, we find *McKinney* particularly illuminating. After approximately fourteen hours of deliberations, the jury in *McKinney* returned a guilty verdict on three counts and advised the court that it was unable to reach a unanimous verdict on the remaining twenty-nine counts. The district court then administered a supplemental *Allen* instruction. One hour and twenty minutes later the jury unanimously determined that the defendant was guilty on the remaining twenty-nine counts. *See McKinney*, 822 F.2d at 950.

Having assessed the circumstances of this case, and because we cannot distinguish them from those present in *McKinney*, we conclude that the *Allen* charge was not coercive. Both here and in *McKinney* the trial court administered a supplemental *Allen* instruction only after the jury informed the court that it was unable to reach a verdict. *See id.* In both cases the trial court adininistered a full *Allen* charge, stating *inter alia* that although no juror should yield any conscientious objection, each dissenting juror should consider whether his or her doubts were reasonable. *See McKinney*, 822 F.2d at 950 n. 2. We hold that the magistrate did not commit reversible error by administering the supplemental *Allen* charge.

## VI.

The order of the district court affirming Butler's conviction before the magistrate is AFFIRMED.

SAFFELS, District Judge, concurring in part and dissenting in part.

Although this judge concurs with the majority of the panel regarding most of its decisions on the issues raised in this appeal, I must write separately to express my disagreement with the majority on the issue of the *Allen*[1] charge given in this case.

The majority relies on *United States v. McKinney*, 822 F.2d 946 (10th Cir.1987), to support its holding that the trial court did not commit error in giving an *Allen* instruction to the deliberating jury in this case. The majority reads *McKinney* as a blanket approval of the *Allen* instruction given to the deliberating jury in this case. This judge reads *McKinney* to simply stand for the proposition that the use of an

---

**1.** An *Allen* charge derives its name from jury instructions approved in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

*Allen* instruction after a jury has begun deliberating must be reviewed on a case-by-case basis to determine whether the instruction had a coercive effect on the jury. *See United States v. Porter,* 881 F.2d 878, 888 (10th Cir.), *cert. denied* —— U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) and *United States v. Mobile Materials, Inc.,* 881 F.2d 866, 878 (10th Cir.1989), *cert. denied Philpot v. United States,* —— U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). If an *Allen* instruction is to be given, the preferred procedure in this circuit is to give it at the same time as the other instructions and not after the jury has begun deliberating. *See United States v. Blandin,* 784 F.2d 1048, 1050 (10th Cir.1986), *construed in McKinney,* 822 F.2d at 951. The trial judge, however, may give an *Allen* instruction to a deliberating jury only if the instruction will not have a coercive effect on the jury. *McKinney,* 822 F.2d at 951.

This court and the Ninth Circuit Court of Appeals have enumerated some factors that should be examined to determine whether an *Allen* instruction has a coercive effect: (1) the language of the instruction; (2) the instruction's incorporation with other instructions; (3) the timing of the instruction, for example, whether given before the jury has commenced deliberation and whether given before the jury has reached an impasse or deadlock; (4) the total time of jury deliberation; and (5) the indicia of coercion or pressure on the jury. *See Porter,* 881 F.2d at 888 and *United States v. Foster,* 711 F.2d 871, 884 (9th Cir.1983), *cert. denied* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). These factors are relevant to the coercive or non-coercive nature of an *Allen* instruction.

After considering these factors, it is clear that the *Allen* instruction in this case was coercive. The jury's note to the court is of particular relevance in indicating the instruction's coercive effect. Upon reach-ing a verdict, the jury presented the following note to the court:

We the jury thank you, Your Honor, for your further instruction and comments, *without which we would have failed.* Jim McGraw. (emphasis added).

This last note from the jury provides a clear indication that the *Allen* instruction was coercive. In addition, the instruction was given after the jury had reached an impasse and was obviously deadlocked.[2] Also, the jury had deliberated for a substantial time, considering that the trial lasted only a day and a half, before reporting the deadlocked nature of their deliberations. Finally, the instruction given in this case was the traditional *Allen* instruction which encourages those jurors in the minority to reexamine their position; instead of a less coercive, modified *Allen* charge, which encourages each juror, whether in the majority or minority, to reconsider his or her position. *See Porter,* 881 F.2d at 889 (citing *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)).

After reviewing these factors, this judge is firmly convinced that the facts in the present case reflect that the *Allen* instruction had a coercive effect on this jury. Thus, a new trial is warranted. For the foregoing reasons, I cannot agree with the majority's decision to the extent it approves the use of the *Allen* instruction under the particular facts of this case. I do agree, however, that the other decisions of the trial court, challenged in this appeal, should be affirmed.

Finally, this judge believes that, at some future time, the Tenth Circuit Court of Appeals should adopt the modern trend of prohibiting the use of *Allen* instructions, as a per se rule, once a jury commences its deliberations. As a panel of the Eleventh Circuit Court of Appeals has observed:

The modern judicial trend, however, is against the Allen charge. In the exercise of their supervisory power, three federal circuit courts have prohibited Al-

---

**2.** After nearly nine hours of deliberation in a case that took only a day and a half to try, the jury sent the following note to the court:

The jury has been polled. All have voted to state we cannot reach a verdict of guilty or not guilty. James McGraw. February 24, 1988.

Thereafter, the magistrate presiding over the trial of this case gave the jury the *Allen* charge in question.

len charges since 1969; and four other federal circuit courts have sharply curtailed their use. Moreover, during the last twenty-seven years, at least eighteen states have rejected the Allen charge.

Scholars have sharply criticized the Allen charge because of its coercive impact on juries.

*United States v. Rey*, 811 F.2d 1453, 1458 (11th Cir.), *cert. denied* 484 U.S. 830, 108 S.Ct. 103, 98 L.Ed.2d 63 (1987) (footnotes omitted). Such a per se rule would prevent any unwarranted intrusion by the court into the province of the jury.

Regardless of the fact that this court has not yet adopted the modern trend of prohibiting *Allen* charges, I remain convinced that under the particular facts of this case, the *Allen* charge had a coercive effect on the jury. Thus, applying the present law of this circuit, I would reverse the conviction and remand the case for a new trial.