958 F.2d 381
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Shawyne Tallisce ANDERSON, Defendant-Appellant.
 No. 91-6052.
 United States Court of Appeals, Tenth Circuit.
 March 11, 1992.
 
 Before McKAY, Chief Judge, SETH, Circuit Judge, and SHERMAN G. FINESILVER, District Judge*.
 ORDER AND JUDGMENT**
 SETH, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 In this appeal we revisit the Oklahoma City bus depot and the drug interdiction program run by two detectives, Gary Eastridge and Glenn Ring, of the Oklahoma City Police Department. In United States v. Evans, 937 F.2d 1534 (10th Cir.), we held that the same detectives' initial questioning of an individual matching their drug courier profile did not constitute a seizure implicating the Fourth Amendment. Here, we must determine whether a similar encounter between the two detectives and Defendant-Appellant Shawyne Anderson was more than a police-citizen encounter. In addition, as is usual in these cases, we are asked to review the district court's application of problems in the Sentencing Guidelines.
 
 
 3
 Appellant is a 33-year-old African-American female with some college education. She has no prior criminal record and was steadily employed until her arrest at the Oklahoma City bus depot.
 
 
 4
 Appellant had gotten off a bus from California carrying a suitcase. The officers saw her make a phone call and thought this and her demeanor was suspicious. They confronted her, asked for identification, and whether she was carrying guns or drugs. She asked to go into the terminal. There she was questioned further. She denied the suitcase was hers, and from her movements and general appearance the officers decided that she consented to their search of the suitcase. It was searched and was found to contain drugs and no money. Appellant throughout all the subsequent proceedings and hearings maintained that she thought the suitcase contained only money.
 
 
 5
 Appellant was initially indicted for possession with intent to distribute approximately eight kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1). Against the advice of counsel, she attempted to plead guilty. After a conference, the district court rejected the plea apparently because the Appellant lacked the scienter to plead guilty to knowingly possessing the cocaine. Appellant had maintained throughout that she believed she was carrying only money in the suitcase. The judge before whom the plea was heard, Judge Russell, apparently believed and relied on these assertions.
 
 
 6
 The government thereafter filed a superseding information alleging that Appellant unlawfully traveled in interstate commerce to facilitate the distribution of cocaine in violation of 18 U.S.C. § 1952(a)(3). Appellant entered a conditional guilty plea reserving the right to appeal the denial of her motion to suppress.
 
 
 7
 The relevant facts are taken from the two suppression hearings held by the district court. During the first hearing on October 4, 1990, Appellant was represented by court-appointed counsel. The hearing consisted solely of the testimony of Detective Ring. Her then attorney decided not to have Appellant testify. On October 9, 1990 the court issued an order denying Appellant's motion to suppress.
 
 
 8
 Approximately one month later, Appellant returned to the district court with new counsel and asked the court to reopen the hearing on the motion to suppress to supplement the record. The new counsel stated that Appellant had not felt comfortable with her court-appointed counsel and had not testified in large part because she was not familiar with the court system. The new counsel also stated that Appellant had not told her first counsel the truth about what happened because she did not trust him.
 
 
 9
 On November 6, 1990, a second hearing was held where both Appellant and Detective Ring testified. Although there were inconsistencies in the testimony of Appellant and Detective Ring, the court reaffirmed an earlier order denying the motion to suppress.
 
 
 10
 The encounter leading to Appellant's arrest began when Appellant arrived in Oklahoma City on a bus originating in Los Angeles, as mentioned above. Some additional details about the encounter are necessary. The bus was under surveillance on its arrival by the two detectives because Los Angeles was a known source city of illicit drugs. Both detectives were dressed in civilian clothes with no external police identification.
 
 THE FIRST SUPPRESSION HEARING
 
 11
 At the first suppression hearing which was before Judge Russell on October 4, Detective Ring testified that he observed Appellant leave the bus carrying a "soft sided-type suitcase." Ring stated that he saw her briefly speak to a man who was also traveling on the bus but had not gotten off with her. She then went to a telephone outside the bus terminal where she dialed a set of numbers and then hung up. Ring testified that based on his observations he believed she was calling a telephone pager. He did not state any reason why he so concluded, but he knew from his experience pagers were used by drug dealers. Appellant testified that she was calling her family. During this time, Ring stated that Appellant was "looking around" and that "she paid a lot of attention to me." He also testified that it appeared that Appellant nodded to another person.
 
 
 12
 After consulting with Detective Eastridge, who also observed that Appellant was looking around and protecting her bag, the two officers approached Appellant at the phone. They identified themselves, showed their credentials and explained to Appellant that they were police officers trying to intercept loads of narcotics originating in the Los Angeles area. Appellant was asked for identification and her bus ticket. She handed the detectives a California driver's license issued in her name.
 
 
 13
 Detective Ring testified, as is typical in these circumstances, that at this point in the encounter, Appellant appeared very nervous. The bus station was not in the best part of town and Appellant said the officer came close to her and he was dressed like a "cowboy." He stated that her hand was "visibly shaking" while she produced her identification. Ring then asked her whether she was carrying weapons or narcotics. When Appellant did not reply, Ring asked if he could look in her bag. Instead of directly responding, Appellant asked if they could go someplace else. She and the two detectives proceeded into the bus terminal to an unoccupied area in the snack bar. Ring testified that neither he nor Detective Eastridge touched Appellant or guided her to the snack bar.
 
 
 14
 Once in the snack bar, Ring again asked if he could look in the bag. Appellant picked up the bag, placed it on a table in the snack bar and stepped back. She then denied that the bag was hers. Before opening the bag Ring again asked if the bag was hers and she said no. Ring stated that he interpreted Appellant's statement that the bag was not hers and her body language in stepping back from the bag to mean she was giving permission to look into the bag. Detective Ring opened the bag and discovered approximately eight kilograms of cocaine under a sheet or pillowcase. Appellant was then placed under arrest.
 
 
 15
 Ring testified that throughout his conversation with Appellant he was extremely friendly and did not raise his voice. He stated on cross-examination that he never told Appellant that she was free to leave.
 
 THE SECOND SUPPRESSION HEARING
 
 16
 During the second suppression hearing on November 6, 1990 before Judge Russell, Appellant denied that she ever gave Detective Ring permission to search her luggage. She stated that when she asked, "What's this all about?", Ring responded that "[a]s soon as you cooperate with me, then you won't be detained anymore." She testified that before Ring opened the luggage she asked him whether he had a search warrant and was told that he did not need one.
 
 
 17
 Detective Ring denied Appellant's statements. The court, describing the issue as one of credibility, chose to believe the testimony of Detective Ring. It held that the statements of Detective Ring were consistent with his earlier testimony. The court found that Appellant's credibility was questionable because she had told several different stories regarding the case.
 
 STANDARD OF REVIEW
 
 18
 The applicable standard of review is well established. "On appeal from the denial of a motion to suppress, 'our standard of review is to accept the trial court's findings of fact, unless clearly erroneous, and to consider the evidence in the light most favorable to the government.' " United States v. Donnes, 947 F.2d 1430, 1432 (10th Cir.) (quoting United States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir.)). Determinations of reasonableness concerning Fourth Amendment issues and other questions of law are reviewed de novo. United States v. Butler, 904 F.2d 1482 (10th Cir.).
 
 
 19
 Appellant argues that the district court erred by finding that no seizure implicating the Fourth Amendment occurred. Citing Terry v. Ohio, 392 U.S. 1, Appellant contends that the detectives were required, at a minimum, to be able to point to specific and articulable facts which justified the stop and warranted the intrusion. The district court disagreed and held that the detectives' actions never exceeded a typical police-citizen encounter.
 
 
 20
 The three categories of encounters between police and citizens are well established. See United States v. Morgan, 936 F.2d 1561, 1566 (10th Cir.) (quoting United States v. Santillanes, 848 F.2d 1103, 1106 (10th Cir.)). Here, we must determine whether the detectives' actions can meet a Fourth Amendment challenge. Our task is simplified by our recent decision in Evans and the Supreme Court's decision in Florida v. Bostick, 111 S.Ct. 2382, 2386.
 
 
 21
 In Evans we held that questioning by Detectives Ring and Eastridge at the Oklahoma City bus depot did not implicate Fourth Amendment concerns. The encounter in Evans was described as cooperative, the conversations were friendly and there were no threats or promises made to the defendant. Evans, 937 F.2d at 1537. We there found that nothing in the record exceeded the proper scope of a typical police/citizen encounter as articulated in Florida v. Bostick.
 
 
 22
 The facts in the present case parallel Evans. In its initial order denying Appellant's motion to suppress (October 9, 1990), the district court found:
 
 
 23
 "In this case, the Defendant voluntarily cooperated with the officers' questioning. Nothing in the officers' conduct would have caused a reasonable person to believe that she was not free to leave. The officers exerted no physical force, and engaged in no show of authority beyond showing their badges and identifying themselves as police officers. When the Defendant asked the officers to move the questioning to another area, the officers complied. She was not detained by physical force or show of authority."
 
 
 24
 Although the Appellant presented evidence in the second suppression hearing conflicting with the officers' statements, the then district court did not alter the findings theretofore made. The court there stated that "it's unquestionable that the officers in question were polite, were not overbearing with the Defendant. And I'm satisfied that she was under no inhibitions as far as her ability to leave the scene based on anything that these officers did on the occasion in question." Viewing the evidence in the record in the light most favorable to the government, there is nothing to indicate that the district court's findings are clearly erroneous.
 
 
 25
 Appellant also challenges the consent to search the bag. From her brief, it appears that Appellant is arguing that the coercive nature of the officers' conduct prior to the search made the consent involuntary rather than arguing that the consent itself was not given.
 
 
 26
 Our holding on the seizure issue disposes of the first part of Appellant's argument. Appellant cannot contend that the search was invalidated by her unlawful detention. See United States v. Mendenhall, 446 U.S. 544, 558. The question remains, however, whether the consent was invalidated for any other reason.
 
 
 27
 The voluntariness of consent is a question of fact to be determined from the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218. The government had the burden of showing that the consent was freely and intelligently given without duress or coercion. United States v. Recalde, 761 F.2d 1448, 1453 (10th Cir.). In our evaluation of the facts we start with the presumption that Appellant did not waive her constitutional rights. Id.
 
 
 28
 After reviewing the record and the findings of the district court, we find nothing to suggest that the district court was clearly erroneous. In its initial order, the district court found that "[t]he search of the bag in the Defendant's possession was clearly consensual...." After the second hearing, the court stated that Appellant "conceded to have her purse and ultimately the packages in question searched."
 
 THE GUIDELINES
 
 29
 Appellant's second point on appeal is that the district court misapplied the Sentencing Guidelines. She contends that the district court erred when it based her sentence on the eight kilograms of cocaine found in the suitcase she was carrying. We agree.
 
 
 30
 As mentioned, Appellant was initially charged with possession with intent to distribute cocaine, a violation of 21 U.S.C. § 841(a)(1). Appellant's brief states that, against the advice of counsel, Appellant attempted to plead guilty under this statute. The brief further states that the district court rejected her plea because she did not knowingly possess the drugs. There was a conference with the trial judge who was then handling the case, but there is no record of these proceedings. Although there is nothing in the record on appeal to expressly support this statement, it is apparent that an agreement for a change was reached, a change which eliminated the possession with intent. We can infer from the superseding information filed by the government that Appellant's position is correct. As mentioned, Appellant maintained throughout that she though that there was only money in the suitcase, and that the suitcase was to be delivered in Washington to its owner, the person who had given it into her care.
 
 
 31
 Unlike the indictment under § 841(a)(1), the superseding information charging Appellant under § 1952 did not require that she knowingly "possess" the drugs. The specific language of the superseding information states that Appellant,
 
 
 32
 "did knowingly and unlawfully travel in interstate commerce from the Los Angeles, California, area, to the Oklahoma City, Oklahoma, area, with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, and carrying on of an unlawful activity, i.e., distribution of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and thereafter did perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity.
 
 
 33
 "All in violation of Title 18, United States Code, Section 1952(a)(3) and (2)."
 
 
 34
 Appellant pleaded guilty to the superseding information.
 
 
 35
 Appellant was sentenced to a 60-month term of imprisonment. The sentence was computed under Guideline § 2E1.2 "Interstate or Foreign Travel or Transportation in Aid of a Racketeering Enterprise." Under this Guideline, the base offense level is the greater of 6 or "the offense level applicable to the underlying crime of violence or other unlawful activity in respect to which the travel or transportation was undertaken." U.S.S.G. § 2E1.2(a). The district court further computed her sentence using distribution of cocaine as the underlying unlawful activity. Under § 2D1.1(c)(6) the offense level for an offense involving at least 5 kilograms but less than 15 kilograms of cocaine is 32. The district court granted no adjustments to the base offense level. Thus, the court held that Appellant's base offense level was 32.
 
 
 36
 Our position on this appeal of the sentencing issues is difficult as usual because of the structure of the Guidelines, but more so because of the first trial judge's determination that Appellant could not plead guilty to the indictment charging under 21 U.S.C. § 841. This, in our view of the circumstances before us, was by reason of the judge's acceptance of Appellant's assertions that she did not know what was in the suitcase she had been given to take to Washington to return to the person who had given it to her. She thought it contained money. She had a suspicion that it may have been "drug money." This position as to possession with intent was apparently also accepted by the prosecutor by the filing of a superseding information which sought to charge under § 1952, and the plea.
 
 
 37
 There is nothing whatever to indicate that the second judge, who sentenced Appellant, was aware of the circumstances leading to the first judge's refusal to accept a guilty plea to § 841. However, we feel compelled to accept the determination made by the first trial judge, and hold that there was no basis for the sentence by the second trial judge using § 841.
 
 
 38
 There is a second problem with the application of the Guidelines as made by the sentencing judge. The information, reciting a violation of 18 U.S.C. § 1952, as quoted more fully above, alleges that the Defendant
 
 
 39
 "did knowingly and unlawfully travel in interstate commerce ... with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, and carrying on of an unlawful activity, i.e., distribution of cocaine...."
 
 
 40
 The "unlawful activity" alleged to be intended to be carried on is the "distribution of cocaine." However, that is not an offense under the statute. The statute is a racketeering statute and "unlawful activity" is not defined for all subsections as the distribution of narcotics but instead is stated or defined in § 1952(b) as follows:
 
 
 41
 "(b) As used in this section (i) 'unlawful activity' means (1) any business enterprise involving gambling ..., narcotics or controlled substances...."
 
 
 42
 Thus the "unlawful activity" must be a business enterprise, something continuing, and not an isolated incident. United States v. Fox, 902 F.2d 1508 (10th Cir.); United States v. Kendall, 766 F.2d 1426 (10th Cir.).
 
 
 43
 There was no such allegation. Thus the information as written did not allege an offense under § 1952 and a plea of guilty to such an information was a nullity.
 
 
 44
 We cannot agree with the trial court's application of the Guidelines to Appellant's case. We must hold that the application made was clearly erroneous. Further, if the wrong Guideline is applied, the sentencing constitutes plain error. United States v. Smith, 919 F.2d 123 (10th Cir.).
 
 
 45
 The judgment of the trial court on the sentencing is REVERSED and REMANDED for further consideration. The judgment on the merits is REVERSED and REMANDED for a determination as to what crime was charged, if any, and for such other and further proceedings as the trial court may deem necessary.
 
 
 
 *
 Honorable Sherman G. Finesilver, Chief United States District Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3