977 F.2d 597
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Juan SILVA-MORENO, Defendant-Appellant.
 No. 90-2282.
 United States Court of Appeals, Tenth Circuit.
 Sept. 1, 1992.
 
 1
 Before LOGAN and BRORBY, Circuit Judges, and CARRIGAN, District Judge.
 
 
 2
 ORDER and JUDGMENT**
 
 
 3
 CARRIGAN, District Judge.
 
 
 4
 Appellant Juan Silva-Moreno appeals his conviction for transporting undocumented aliens in violation of 8 U.S.C. § 1324(a)(1)(B). The issue before us is whether the district court properly denied Silva-Moreno's motion to suppress physical evidence and statements obtained after he was stopped while driving his automobile.
 
 I.
 
 5
 On June 19, 1990, Tony Dominguez, an investigator with the Eddy County, New Mexico, Sheriff's Department, observed a mid-compact Chevrolet with Texas license plates travelling northbound through Carlsbad, New Mexico.[1] That vehicle was moving noticeably slower than the traffic flow and appeared to be carrying at least seven people of Mexican descent. Dominguez followed the Chevrolet onto a residential street where the driver and right front passenger appeared to be looking for a particular address. Local police and the United States Border Patrol previously had received information that a home in that residential area was harboring illegal aliens.
 
 
 6
 Based on Dominguez's report as well as the Chevrolet's presence in the vicinity of a house suspected of harboring illegal aliens, Joe Steven Smith, a Border Patrol agent, went to the area and stopped the car. He found eight persons in the car, three in the front seat, four seated in the rear seat and one lying on the laps of the other rear seat passengers. Smith asked the car's occupants their citizenship. Silva-Moreno, the driver, produced an amnesty card. His passengers all stated that they were citizens of Mexico.
 
 
 7
 Silva-Moreno was subsequently charged with transporting undocumented aliens in violation of 8 U.S.C. § 1324(a)(1)(B). After a hearing, the district court denied his motion to suppress physical evidence and statements obtained when his vehicle was stopped. He then pleaded guilty, reserving his right to appeal the denial of his motion to suppress.
 
 II.
 
 8
 A trial court's findings of fact must be accepted unless clearly erroneous. United States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir.1990). If the trial court has not made findings of fact, this court must uphold the trial court's ruling so long as it is supported by any reasonable view of the evidence. United States v. Cooper, 733 F.2d 1360, 1364 (10th Cir.), cert. denied, 467 U.S. 1255 (1984). Here the trial judge did make oral findings (TR. 44-45), and therefore the clearly erroneous standard applies.
 
 
 9
 Review of the district court's denial of the motion to suppress turns upon a determination of whether the stop of Silva-Moreno's vehicle was supported by reasonable suspicion. United States v. Brignoni-Ponce, 422 U.S. 873 (1975). Reasonableness of a search and seizure under the Fourth Amendment is a question of law which we review de novo. United States v. Butler, 904 F.2d 1482, 1484 (10th Cir.1990).
 
 
 10
 An investigatory stop in a border area is lawful if "the totality of the specific articulable facts presented in [a] case, together with the rational inferences to be drawn therefrom" reasonably warrant suspicion that a vehicle contains persons illegally in the country. United States v. Monsisvais, 907 F.2d 987, 992 (10th Cir.1990).
 
 
 11
 In determining whether there is reasonable suspicion to stop a car in a border area, officers may consider a number of factors, including:
 
 
 12
 "(1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded." Monsisvais, 907 F.2d at 990 (citing Brignoni-Ponce, 422 U.S. at 884-85).
 
 
 13
 Although the ancestral appearance of a person, by itself, does not justify an investigatory stop in a border area, it is a relevant factor that an officer may consider. Brignoni-Ponce, 422 U.S. at 886-87. In addition, out-of-state license plates are entitled to "limited consideration" because they indicate to an officer observing them that the vehicle is not merely local traffic. United States v. Leyba, 627 F.2d 1059, 1064 (10th Cir.) cert. denied, 449 U.S. 987 (1980).
 
 
 14
 In the instant case, Silva-Moreno's vehicle was in an area 110 air miles from the border. His car, a Chevrolet mid-compact with Texas license plates, was traveling slower than the flow of traffic and was overloaded with at least seven people, all apparently of Mexican descent. In addition, the right front passenger and driver appeared to be looking for a particular address in an area where it had been reported that illegal aliens were being harbored in a house. Finally, the officers involved had substantial experience in New Mexico interdicting the flow of illegal aliens.[2] We conclude that these facts reasonably warranted suspicion that Silva-Moreno's vehicle contained persons illegally in this country.
 
 
 15
 To support his argument that the district court erred in denying his motion to suppress, Silva-Moreno relies on this court's holding in Monsisvais. That case involved a vehicle stopped near Truth or Consequences, New Mexico. Border Patrol agents had detected a heavily loaded pick-up truck with a camper and Arizona license plates travelling at night on a road commonly used to skirt a nearby border checkpoint. The Border Patrol agents observed the driver slow the pick-up to make an exit and then suddenly correct his turn to avoid that exit. Based on those facts, the vehicle was stopped and searched. One hundred kilograms of marijuana were seized. After a hearing, the district court denied the defendant's motion to suppress. We reversed, holding that the facts, when scrutinized, did not reasonably warrant suspicion that the defendant's vehicle contained persons illegally in the country.
 
 
 16
 Monsisvais does not control here. The evidence in the record in Monsisvais was seriously inadequate. The record in Monsisvais, unlike that here, did not include information regarding recent illegal immigrant activity in the area, the proximity of the area to the border or details of the agents' previous experience with alien traffic. Moreover, the agents in Monsisvais, unlike those here, could not see the passengers and therefore had to speculate as to the nature of the vehicle's heavy load. Finally, in this case, the conduct of the driver and right front passenger in looking for a particular address in the vicinity of a residence suspected of harboring illegal aliens is a significant factor not present in Monsisvais.
 
 
 17
 We hold that the record before us established reasonable suspicion that Silva-Moreno's vehicle contained persons illegally in this country, and therefore the investigative stop was proper. Therefore the trial judge did not err in denying the motion to suppress.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Jim R. Carrigan, United States District Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Carlsbad, New Mexico is approximately 110 air miles and 165 road miles from of the Mexican border
 
 
 [2]
 Officer Dominguez testified that he had worked with the United States Border Patrol in the area since 1971. Agent Smith testified that he had been a Border Patrol agent in that area since 1972