**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daryl Lee EVANS,**
**Defendant–Appellant.**

No. 90–6304.

United States Court of Appeals,
Tenth Circuit.

July 8, 1991.

Leslie Kaestner, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with her on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Jerome T. Kearney, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Before TACHA, BARRETT and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

This appeal arises from the district court's denial of Defendant Daryl Lee Evans's, motion to suppress evidence. Defendant states the issues presented for review as follows: "Whether the district court erred in denying appellant's motion to suppress evidence seized pursuant to an un-

lawful employment of a drug courier profile and unlawful *Terry* investigation;" and "[w]hether the district court erred when it denied appellant's motion to suppress evidence seized pursuant to an unlawful search of the carry-on luggage without a search warrant." We affirm.

## I.

On April 25, 1990, Detective Sergeants Gary Eastridge and Glenn Ring of the Oklahoma City Police Department were working at the Union Bus Station in Oklahoma City as part of an interdiction program to detect and deter the arrival of drugs into the area. At approximately 2:00 p.m. that day, the officers observed a bus, which had originated in Los Angeles, ar.ive at the station and its passengers disembark. Among the passengers observed by the officers was Daryl Lee Evans. Mr. Evans was carrying a gray, soft sided bag. As Mr. Evans proceeded through the terminal, the officers noticed him scanning the area and acting in a very nervous manner. Mr. Evans then placed the gray bag he was carrying between his feet as he watched the luggage being unloaded from the bus.

Based on these observations and Sergeant Ring's experience and training in detecting drug couriers, the officers approached Mr. Evans, identifying themselves as narcotics officers, asked Mr. Evans for identification, and explained their reason for speaking with him.

Mr. Evans produced his identification while the conversation ensued but became increasingly nervous. Sergeant Ring then asked if Mr. Evans would allow the officers to search his carry-on bag. Mr. Evans told the officers he did not have the keys to the bag but subsequently produced two claim tags for other luggage that he claimed contained the keys. Mr. Evans gave the tags to Sergeant Eastridge, who attempted, but was unable, to locate the other luggage. The officers continued their conversation with Mr. Evans. Sergeant Ring stated he thought it was unusual that Mr. Evans did not have the keys to the bag on his person, whereupon Sergeant Ring asked Mr. Evans if he could pat him down

to try and find the keys, and Mr. Evans consented. Both officers then proceeded to pat down Mr. Evans, and Sergeant Eastridge discovered a lump near the calf of Mr. Evans's leg. When Sergeant Eastridge inquired about the lump, Mr. Evans responded that it was "weed."

Following this, Mr. Evans was advised he was under arrest and was taken to an interior office at the bus station. Sergeant Ring then informed Mr. Evans that due to his arrest his carry-on bag would be inventoried before submitting it to the Oklahoma City property room according to department policy. Sergeant Ring then pried open a zipper on the bag and removed from the compartment a taped plastic bundle. Sergeant Ring noticed the bundle was sealed and packaged like kilograms of cocaine he had seized in the past. Sergeant Ring then asked Mr. Evans if there were any additional narcotics, and Mr. Evans said there were two other packages similar to the one already discovered. Sergeant Ring then asked Mr. Evans if he would consent to the officers opening the taped bundle. At this point, Mr. Evans advised that he wanted the search to cease until the officers obtained a search warrant, and the search ceased.

Mr. Evans was then transported to the police station, and Sergeant Ring and Sergeant Eastridge sought and secured two search warrants—one for the taped bundle, and one for the other compartment of the bag. After obtaining these warrants, all three bundles were opened. The contents tested positive for the substance cocaine hydrochloride.

## II.

■ In reviewing the denial of a defendant's motion to suppress evidence, we accept the trial court's findings of fact, unless clearly erroneous, and consider all the evidence in a light most favorable to the Government. *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir.1990). However, ultimate determinations of reasonableness under the Fourth Amendment, and other questions of law, are reviewed de

novo. *United States v. Butler*, 904 F.2d 1482, 1484 (10th Cir.1990).

■ Mr. Evans first contends his Fourth Amendment rights were violated when the officers at the Union Bus Station approached him based on a drug courier profile. Before addressing the lawfulness of using a drug courier profile, we must determine whether any Fourth Amendment protection is due Mr. Evans under these circumstances. This court has previously identified three categories of encounters between police and citizens, each representing different levels of Fourth Amendment entitlement. We described these categories as follows:

The first is referred to as a police-citizen encounter and is characterized by the voluntary cooperation of a citizen in response to non-coercive questioning. This has been held to raise no constitutional issues because this type of contract [sic] is not a seizure within the meaning of the Fourth Amendment. . . .

The second type of encounter is the *Terry*-type of stop. The standards here are set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Most courts characterize this as a "brief, non-intrusive detention during a frisk for weapons or preliminary questioning * * *." This is considered a .seizure of the person within the meaning of the Fourth Amendment, but need not be supported by probable cause. In order to justify an investigatory stop, the officer need have only "specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime."

The final category is an arrest which is characterized by highly intrusive or lengthy search or detention. An arrest is justified only when there is probable cause to believe that a person has committed or is committing a crime.

*United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir.) (citations omitted), *cert.*

denied, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

■ In the present case, the district court found the initial questioning of Mr. Evans prior to the pat down fell within the first category of police/citizen encounters, rendering any Fourth Amendment claims unwarranted. *See id.* Merely approaching an individual in a public place and asking questions of the individual, including asking to examine the person's identification or requesting the person's consent to search his or her luggage is not a seizure implicating the Fourth Amendment. *Florida v. Bostick*, — U.S. —, —, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). As long as the police have not, by means of physical force or show of authority, in some way restrained the liberty of the citizen, such a consensual encounter will not constitute a seizure for purposes of the Fourth Amendment. *Id.* at ——, 111 S.Ct. at 2386. The district court found, inter alia: "the encounter was a cooperative one"; "[t]he defendant was engaged in conversations . . . [and] was approached in a friendly conversational manner"; and "[t]here were no threats made to the defendant . . . [nor] promises . . . given." Our review of the record reveals these findings are fully supported and not clearly erroneous. Therefore, no Fourth Amendment concerns were implicated during this initial non-coercive questioning.

■ The pat down of Mr. Evans, as it involved more than mere cooperative questioning, is entitled to Fourth Amendment scrutiny. In regard to the pat down, the district court made the following findings: "that this pat down was consented to by the defendant"; "that the consent was not limited to Detective Ring"; "that it was not limited to the pockets only"; and that "defendant was well aware of these two officers" and "[t]he fact that the defendant was looking at Officer Ring when this consent was made does not serve to limit the consent."[1] Consent to search is valid if given voluntarily. *Schneckloth v. Busta-*

---

1. The district court also found on this point that two statements made in the Defendant's affidavit relating to an alleged restriction of his consent, were unsupported in the record and otherwise not credible. We agree with these findings.

*monte*, 412 U.S. 218, 222–23, 93 S.Ct. 2041, 2045–46, 36 L.Ed.2d 854 (1973). The voluntariness of consent is a question of fact to be determined from the totality of all the circumstances. *Id.* at 227, 93 S.Ct. at 2047. We have previously set forth the following three-tiered analysis to be used in determining whether consent was voluntary:

> First, there must be clear and positive testimony that the consent was unequivocal and specific, and freely and intelligently given. Second, the Government must establish that consent was given without duress or coercion. Finally, we evaluate the first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.

*United States v. Corral*, 899 F.2d 991, 994 (10th Cir.1990) (quoting *United States v. Recalde*, 761 F.2d 1448, 1453 (10th Cir. 1985) (citations omitted)).

The record herein clearly indicates Mr. Evans gave a voluntary and unequivocal consent to the pat down. There is no evidence the officers used any threats or other forms of coercive conduct in obtaining this consent. Moreover, after the pat down by both officers had commenced, Mr. Evans did not request the officers to cease the pat down, nor did he manifest any conduct indicating he wanted the pat down to be ceased. Therefore, we find the district court's findings on this issue were supported by the record and not clearly erroneous. Based on the totality of the circumstances and giving the appropriate indulgence to the presumption against waiver, we nevertheless conclude the consent given by Mr. Evans was voluntary and not restricted to a search by Sergeant Ring only.

■ Mr. Evans next argues the district court erred in not suppressing the evidence because it was "fruit of the poisonous tree" of the unlawful search of the carry-on bag, and cites *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The search complained of was upheld by the district court pursuant to the inventory search exception to the warrant requirement, and alternatively, under the inevitable discovery doctrine. Mr. Evans contests both rulings.

First, in regard to its ruling that the initial search of the carry-on bag was conducted as a legitimate inventory search, the district court made the following findings: "Section 239.29 is the policy provision that governed or should have governed Officer Ring's conduct in this case"; "pursuant to this policy, the case in which the cocaine was found was directed to have been opened by Officer Ring and inventoried before booking"; and "there was not probable cause at that time to believe that contraband or evidence was within and, as a result, there was no requirement for the officer at that stage to follow the second directive with respect to Section 239.29."

Oklahoma City Police Department Policy, Section 239.29, states in pertinent part:

> [1] Locked containers such as suitcases or briefcases must be opened and the contents inventoried before booking. [2] If probable cause exists to believe that contraband or evidence is within, care should be taken to obtain legal authority before opening to ensure the admissibility of that evidence in court.

The first directive indicated above clearly advises the officer to open and inventory the contents of locked containers, unless the second directive is activated by the existence of probable cause. We are convinced, based on the record before us, that probable cause to believe further contraband would be found in the bag did *not* exist at the time Sergeant Ring first opened the bag at the bus station. Therefore, his search was in accordance with departmental policy directing him to open locked containers *before booking*. While Defendant argues the location of the search (at the bus station rather than the police station) mandates a finding that its purpose was merely a "ruse for a general rummaging," *see Florida v. Wells*, —— U.S. ——, ——, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990), we find this argument without merit. Section 239.29 of the Oklahoma City Police Department policy does not require officers to conduct their inventory at a particular place, but "specifically

envisions otherwise." Nor is there any directive in the law imposing such a requirement. We find the officers' explanation for conducting the search at the bus station reasonable, and conclude the search was not invalidated because it was not done at the police station.

Defendant also claims the absence of note-taking by the officers and the cessation of the "inventory" search after finding the first suspicious package further indicates the search was a ruse. The district court acknowledged these concerns but was persuaded that Sergeant Ring's failure to take notes was not improper, since he was at the very outset of the inventory when he encountered the suspicious, taped bundle. The court also declined to fault the officers for acting out of an abundance of caution in heeding Defendant's request that a search warrant be obtained.

In *Wells*, the case relied on by Mr. Evans, the Supreme Court cautioned against inventory searches being used as a ruse for investigatory purposes. — U.S. at ——, 110 S.Ct. at 1635. Our review of the record leads us to conclude that the district court's findings on this matter are not clearly erroneous, and the initial search into Mr. Evans's carry-on bag was not a mere ruse for investigation. *Wells* dealt with the specific problem of the absence of a department policy or standardized criteria governing such searches. *Id.* We do not have such a void in this case. Section 239.29 of the Oklahoma City Police Department Policy clearly provides procedures to be followed. Sergeant Ring adhered to these procedures, and there is no evidence in the record that he anticipated or intended the search to serve any purpose other than that of an inventory of the contents of the bag. Accordingly, we hold the search conducted at the bus station of the carry-on bag was a lawful inventory search, and the evidence discovered subsequently (pursuant to valid search warrants) was not the fruit of an illegality, but was lawfully obtained.

Having decided the search of the carry-on bag was a lawful inventory search, we uphold the district court's decision to deny Mr. Evans's motion to suppress on this basis. Therefore, we need not address the district court's alternate holding that the search was justified and lawful under the inevitable discovery doctrine. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

### III.

For the aforementioned reasons, we AFFIRM the district court's decision to deny Mr. Evans's motion to suppress evidence.