UNITED STATES of America, Plaintiff,

v.

**Richard A. MANUEL, Defendant.**

**C.A. No. 92–10012–01.**

United States District Court,
D. Kansas.

April 13, 1992.

D. Blair Watson, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

Steven Gradert, Asst. Federal Public Defender, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on the motion of defendant to suppress evidence. The court held a hearing in the matter on March 23, 1992, has considered the memoranda of the parties, and is now prepared to rule.

### I. *Background*

At approximately 5:45 p.m. on January 31, 1992, Detectives Beverly Brimer and James Wittridge—two members of the Wichita drug interdiction unit—observed defendant in front of the Wichita bus terminal walking south. A bus had just arrived from Texas, which the detectives con-

sidered a "source state"[1] for illegal drugs, and Detectives Brimer and Wittridge assumed that defendant had gotten off this bus. Defendant was either approaching or standing at a stop light a short distance from the bus terminal when the detectives rapidly approached him. The detectives were in plain clothes with their weapons concealed. The detectives asked defendant if he had just gotten off the bus, and he told them that he had.

The detectives testified that several "interdiction indicators" prompted them to stop defendant for questioning. Notwithstanding that the detectives had not seen defendant leave either the bus or the terminal, the detectives found it suspicious that no one had picked defendant up at the terminal; that defendant had not stopped to make a phone call in the terminal; and that defendant had not checked any luggage but only had one "carry on" bag. Detective Brimer also testified that defendant was walking rapidly and looked over his shoulder twice, which indicated nervousness to her.

After defendant indicated that he had arrived on the bus, the detectives identified themselves as police officers with the drug interdiction unit. They asked defendant if they could speak with him, and defendant agreed. They then asked defendant for identification and his bus ticket, both of which he produced.

The detectives explained the purpose of the drug interdiction unit and asked defendant if he was carrying any weapons, large amounts of cash, or illegal drugs. Defendant said no, and the detectives then asked for permission to search his bag. Defendant gave his permission, stating: "Knock yourself out." While Detective Wittridge searched defendant's bag, Detective Brimer continued questioning defendant. Defendant said that he was in Wichita to meet a "Roger," whose last name and address defendant did not know. Defendant knew only the telephone number of Roger, who was to pick up defendant when he called.

Detective Wittridge found a box wrapped in Christmas paper in defendant's bag. Wittridge asked whether he could open the bag, to which defendant responded that he "would rather not." When asked what was in the package, defendant replied that it contained "perfume or something." Wittridge asked defendant why they could not search the box and told defendant that they were suspicious that it contained drugs. During this period of questioning, Wittridge held the box. The detectives asked defendant at least twice for permission to search the box, but defendant refused permission. Defendant appeared nervous throughout this encounter.

Detective Brimer then asked defendant for permission to search his person for "drugs, weapons, or large amounts of cash." Defendant consented. The search of defendant's person disclosed a "pipe" that the detectives suspected had been used for smoking illegal drugs, although they could not identify the drug from the residue in the pipe. Defendant was then placed under arrest for possession of drug paraphernalia, in violation of local ordinance. Between two and three minutes, but possibly more, had elapsed between the time the detectives first approached defendant and the time he was placed under arrest.

After being placed under arrest, defendant was seated on the sidewalk and handcuffed by Wittridge. During this time, Brimer opened the Christmas package, justifying this warrantless search as a "search incident to arrest" and an "inventory search."[2] The package was found to contain several small packages containing over 200 grams of cocaine base.

## II. *Arguments*

Defendant moves to suppress the contents of the package as the fruit of an illegal warrantless search that was not justified under any exception to the warrant requirement. At the hearing and in his

---

1. Detective Wittridge testified that everyone arriving in Wichita on a bus from Texas is a potential suspect for illegal drugs.

2. Detective Wittridge testified that Brimer opened the box because she was "curious."

memorandum, defendant has raised three specific grounds in support of his motion: (1) defendant was illegally seized within the meaning of the fourth amendment, and any consent was therefore fruit of the poisonous tree; (2) the continued detention of defendant was a mere pretext; and (3) defendant did not give valid consent. Because it is conceded that no warrant authorized the search of defendant's package, the burden is upon the government to prove that this search falls within one of the recognized exceptions to the warrant requirement. *E.g., Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ This Circuit has identified three categories of encounters between police and citizens requiring varying levels of justification and protection: (1) voluntary cooperation of a citizen in response to non-coercive questioning, which is not a fourth amendment seizure and not subject to any justification; (2) a *Terry*-type investigatory stop, characterized by a brief non-intrusive detention that must be based upon "specific and articulable facts" supporting a suspicion of criminal activity; and (3) an arrest, which is a highly intrusive or lengthy search or detention that must be supported by probable cause of criminal activity. *United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

The government submits that this was a voluntary, consensual encounter, and as such was not entitled to any protections of the Fourth Amendment.

The nature of a consensual encounter in public places was summarized in *United States v. Evans*, 937 F.2d 1534 (10th Cir. 1991):

Merely approaching an individual in a public place and asking questions of the individual, including asking to examine the person's identification or requesting the person's consent to search his or her luggage is not a seizure implicating the Fourth Amendment. As long as the police have not, by means of physical force or show of authority, in some way restrained the liberty of the citizen, such a

consensual encounter will not constitute a seizure for purposes of the Fourth Amendment.

*Id.* at 1537 (citing *Florida v. Bostick*, —— U.S. ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)).

Applying these standards, the court finds that the initial encounter between defendant and the detectives was consensual and did not implicate Fourth Amendment protections.

■ This is not to say that the encounter remained consensual. "[A]n initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). Thus, an individual is deemed to have been seized "if he has an objective reason to believe that he was not free to end his conversation with the law enforcement official and proceed on his way." *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990). The objective reasonableness of the individual's belief is evaluated from the perspective of an innocent person. *Bostick*, 111 S.Ct. at 2388.

■ In this case, defendant refused to grant the detectives permission to open the Christmas package. Dissatisfied with this response, the detectives persisted in requesting defendant's consent; asked defendant why he would not consent; informed defendant that they believed that the package contained illegal drugs; did not inform defendant that he was free to go; and, importantly, continued to hold defendant's property. *See Florida v. Royer*, 460 U.S. 491, 501 & 509–13, 103 S.Ct. 1319, 1326 & 1330–32, 75 L.Ed.2d 229 (1983) (defendant effectively under arrest when officers identified themselves as narcotics officers, told defendant he was suspected of transporting narcotics, asked him to accompanying

police to airport police room, retained his ticket and driver's license, and did not indicate he was free to leave); *Delgado,* 466 U.S. at 216–17, 104 S.Ct. at 1763 ("if the person refuses to answer and the police take additional steps ... to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure"); *Werking,* 915 F.2d at 1409 (continued questioning can violate fourth amendment rights when police do not return driver's license and registration papers); *United States v. Gonzalez,* 763 F.2d 1127, 1132 (10th Cir.1985) (defendant had no reasonable choice but to accompany officer who had defendant's driver's license, car registration, and title); *United States v. Puglisi,* 723 F.2d 779, 783 (11th Cir.1984); *United States v. $83,900.00 in U.S. Currency,* 774 F.Supp. 1305, 1317 (D.Kan.1991). Under these circumstances, it defies common experience to suggest that anyone, innocent or otherwise, would feel free to ignore police officers and simply "proceed on his way." The court therefore concludes that at the time defendant gave permission to submit to a search of his person, he had effectively been seized within the meaning of the Fourth Amendment.

■ Because this encounter was non-consensual, defendant's detention must be justified either as a *Terry*-type stop or as an arrest. If the detention of defendant was illegal, any evidence seized pursuant to otherwise voluntary consent is presumed to be tainted by the illegality, and the government bears a heavier burden to establish that the consent was an independent act of free will. *Royer,* 460 U.S. at 501, 103 S.Ct. at 1326; *United States v. Deases,* 918 F.2d 118, 122 n. 1 (10th Cir.1990), *cert. denied,* ──── U.S. ────, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991); *United States v. Guzman,* 864 F.2d 1512, 1520–21 (10th Cir. 1988); *United States v. Recalde,* 761 F.2d 1448, 1457–58 (10th Cir.1985).

The circumstances justifying a *Terry*-type investigatory stop, and the limited contours of such detentions, are well established.

[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information.

*Hayes v. Florida,* 470 U.S. 811, 816, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985). In determining whether a detention based upon less than probable cause was permissible, the task of the court is to

ascertain whether "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." The actions of the police must be both justified at their inception and reasonably related to the circumstances which justified the interference at the outset.

*United States v. Arango,* 912 F.2d 441, 446 (10th Cir.1990) (quoting *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)), *cert. denied,* ──── U.S. ────, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991). This determination is made by balancing the nature of the intrusion on Fourth Amendment rights against the importance of the governmental interest involved. *Id.*

■ The court finds that there were articulable facts justifying defendant's continued detention. After lawfully stopping defendant and obtaining his permission to talk to him, the detectives discovered that defendant had just arrived on a bus and was not from Wichita; that he was visiting a person whose last name and address he did not know; that he was supposed to call a number given to him so that someone could pick him up; and that defendant was carrying a package wrapped in Christmas paper in late January. When questioned as to the contents of the package, defendant gave the vague response that it contained "perfume or something." These facts were sufficient to support a reasonable suspicion of criminal activity, justifying continued questioning of defendant.[3]

■ The court also finds that the investigatory detention did not exceed the permis-

---

**3.** The court gives no weight to the detectives' testimony that defendant appeared "nervous"

sible parameters of a *Terry* stop. The encounter between defendants and the detectives lasted between two to three minutes. The non-consensual period of defendant's detention occurred on a public street with mild traffic, and it did not involve any physical touching of defendant's person. Moreover, the detectives acted diligently in pursuing their investigation. Finally, the minimal infringement on defendant's Fourth Amendment rights in this case does not outweigh the important governmental interest of investigating possible criminal activity as serious as the possession and distribution of illegal drugs.

■ Because the detention of defendant was a permissible *Terry* stop, the only remaining question is whether defendant's consent to search his person was voluntary. "Consent to search is valid if given voluntarily." *Evans*, 937 F.2d at 1537. This question of fact is determined under the totality of the circumstances, *id.* at 1538, using a three-tiered analysis.

First, there must be clear and positive testimony that the consent was unequivocal and specific, and freely and intelligently given. Second, the Government must establish that consent was given without duress or coercion. Finally, [the court] evaluate[s] the first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.

*Id.* (quoting *United States v. Corral*, 899 F.2d 991, 994 (10th Cir.1990) (quoting *Recalde*, 761 F.2d at 1453)).

Uncontested evidence supports the conclusion that defendant's consent to the pat down search was voluntary. At the initiation of the stop, defendant allowed the detectives to search his carry-on bag, stating casually: "Knock yourself out." Moments later defendant demonstrated that he understood his right to refuse consent when he told the detectives he "would rather not" that they opened the Christmas package. There is no evidence that the detectives obtained defendant's consent

with anything more coercive than that fact that they were police officers who had made clear that they suspected that the package contained illegal drugs. The brief period of the detention on an open, public street also militates against a finding of coercion or duress. In sum, the court concludes that the government has sustained its burden of proving that defendant's consent was voluntary.

■ Finally, defendant challenges his arrest for paraphernalia as a "mere pretext" for searching the package. "[P]retextual use of police power may violate the Fourth Amendment." *United States v. Guzman*, 864 F.2d 1512, 1517 (10th Cir.1988). In deciding whether police action was pretextual, the relevant inquiry is not simply whether the officer could have validly taken the action, but whether the officer has deviated from his normal practice under similar circumstances. *Id.; Werking*, 915 F.2d at 1408; The officer's subjective hope of finding contraband is irrelevant to this inquiry. *Guzman*, at 1518.

Detective Brimer testified that it is possible that a person found in possession of paraphernalia in Wichita will not be arrested, but will simply be issued a ticket. According to Brimer, however, people are routinely arrested for possession of drug paraphernalia "at the officer's discretion." Brimer testified that defendant was placed under arrest because he was not from Wichita. Although the court found portions of Brimer's testimony wholly unworthy of belief, the court accepts this particular aspect of her testimony and finds that Brimer did not deviate from her usual practice. Thus, the court rejects defendant's assertion that his arrest was a pretext for searching the package in which contraband was found.

Accordingly, defendant's motion to suppress evidence is hereby denied.

IT IS SO ORDERED.

throughout this encounter. Nervousness during questioning regarding illegal drug activity is entirely consistent with the behavior of an innocent person. *United States v. $83,900.00 in U.S. Currency*, 774 F.Supp. 1305, 1317 (D.Kan.1991).