UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard A MANUEL, Defendant–
Appellant.

No. 92–3324.

United States Court of Appeals,
Tenth Circuit.

April 30, 1993.

Steven Gradert, Asst. Federal Public Defender, Wichita, KS, for defendant-appellant.

D. Blair Watson, Asst. U.S. Atty. (Lee Thompson, with him on the brief), Wichita, KS, for plaintiff-appellee.

Before KELLY, Circuit Judge, SETH, Senior Circuit Judge, and ALLEY, District Judge.[†]

† The Honorable Wayne E. Alley, United States District Judge for the Western District of Okla-homa, sitting by designation.

PAUL KELLY, Jr., Circuit Judge.

Mr. Manuel entered a conditional plea of guilty, Fed.R.Crim.P. 11(a)(2), to possession with intent to distribute 232 grams of cocaine base, 21 U.S.C. § 841(a)(1). He now appeals the denial of his motion to suppress. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

*Background*

In the early evening, two officers of Wichita's drug interdiction unit observed Mr. Manuel walking away from a bus terminal. Initially, the officers had been following a white male carrying a package they regarded as suspicious, but decided not to continue when he was met at the station by an older woman who appeared to be family or a friend. Mr. Manuel was accompanied by a white male who did not have luggage. Assuming that Mr. Manuel also had gotten off the bus, the officers asked to speak with him. They explained the purpose of drug interdiction and asked Mr. Manuel if he was carrying any weapons, large amounts of cash or illegal drugs. Mr. Manuel said no and the officers then asked permission to search the bag he was carrying. He agreed.

While one officer continued questioning, the other searched the bag and discovered a small box wrapped in Christmas paper with a tag reading "To: Dee Dee From: Kevin." When asked about the package, Mr. Manuel explained that it contained "perfume or something." The officers said that they were suspicious, and made three requests to gain consent to open the package—Mr. Manuel refused. An officer then asked to search Mr. Manuel's person, and he agreed. The search revealed a pipe thought to be drug paraphernalia, in violation of local ordinance. Mr. Manuel was arrested, and the package was opened and found to contain cocaine base.

Relying on *Florida v. Bostick,* —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991), the district court determined that the initial encounter between the officers and Mr. Manuel was consensual and not a seizure. *United States v. Manuel,* 791 F.Supp.

265, 268 (D.Kan.1992). According to the district court, the encounter became an investigatory detention at the time Mr. Manuel consented to a search of his person. *Id.* at 269. The court found that the officers continued to hold Mr. Manuel's property and persisted in seeking his consent to open the package; therefore, he was not free to end the conversation and proceed on his way. *Id.* For reasonable suspicion of criminal activity to justify this seizure, the district court relied on the following facts: (1) Mr. Manuel "had just arrived on a bus and was not from Wichita," (2) he claimed to be visiting a person named "Roger," but did not know Roger's last name or address, (3) Mr. Manuel was supposed to call a number so that someone could pick him up, (4) he was carrying a Christmas package in late-January, and (5) he gave a vague response when questioned about its contents. *Id.* The district court further determined that Mr. Manuel's consent to search his person was voluntary and that the arrest for drug paraphernalia was not a mere pretext for searching the package. *Id.* at 270.

### Discussion

On appeal, Mr. Manuel argues that (1) the investigatory detention was not supported by reasonable suspicion, (2) his consent to search was therefore the fruit of an unlawful detention, (3) even assuming that the detention was supported by reasonable suspicion, his consent was involuntary, (4) he was impermissibly stopped due solely to his race, and (5) the search of the package without a warrant was unlawful.

We review the district court's factual findings on a motion to suppress under the clearly erroneous standard, while considering the evidence in the light most favorable to the district court's decision. *United States v. Soto,* 988 F.2d 1548, 1551 (10th Cir.1993). Legal questions are reviewed de novo as is the ultimate conclusion of Fourth Amendment reasonableness. *Id.*

■ At the outset, we agree with the district court that under *Bostick,* the officers could approach Mr. Manuel as he walked away from the bus station and ask him potentially incriminating questions without ef-fecting a Fourth Amendment seizure. Officers may approach "randomly or because they suspect in some vague way that the individuals may be engaged in criminal activity. . . ." *Id.* —— U.S. at ——, 111 S.Ct. at 2384. In other words, officers may approach on a hunch. Provided that the officers "do not convey a message that compliance with their requests is required," they are free to ask questions, ask to see identification, and seek consent to search personal effects, even when the officers have "no basis" for suspicion. *Id.* at ——, 111 S.Ct. at 2386. In deciding whether an encounter is consensual, the relevant inquiry "is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at ——, 111 S.Ct. at 2387.

■ The immediate issue then becomes whether the officers had reasonable suspicion to detain Mr. Manuel after he had answered several of their questions, but declined to consent to opening the package. Although we consider the totality of the circumstances, *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981), the government was required "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" Mr. Manuel's brief, two to three-minute detention prior to his arrest. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). *See also United States v. Sharpe,* 470 U.S. 675, 689, 105 S.Ct. 1568, 1577, 84 L.Ed.2d 605 (1985).

■ Mr. Manuel contends that his repeated refusals to consent to a search of the package motivated the investigative detention. We agree that the exercise of a right to refuse consent alone cannot be the basis of reasonable suspicion. *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). However, the officers here had more. Mr. Manuel had arrived on a bus from what the officers considered a "source" state, did not use the pay phones at the bus station to call for a ride, claimed to be visiting a friend whose last name and address he did not know, and carried a gift wrapped package, but was vague about its contents. Apart from the real or imagined significance of Christmas paper in late Janu-

ary, the officer testified that narcotics smugglers sometimes gift wrap packages in an effort to discourage police from opening them. The district court's findings concerning articulable circumstances supporting reasonable suspicion are not clearly erroneous. Thus, we cannot attribute the investigative detention to Mr. Manuel's refusal to consent to opening of his package, and we need not address his argument that his subsequent consent to a search of his person was tainted by an unlawful seizure.

■ Mr. Manuel argues that his consent to a search of his person was involuntary. The government bears the burden of proof on this issue, and voluntariness is a question of fact to be determined based on the totality of the circumstances. *Schneckloth v. Busta-monte,* 412 U.S. 218, 228–29, 93 S.Ct. 2041, 2048–49, 36 L.Ed.2d 854 (1973). Mere submission to lawful authority does not equate to consent, rather valid consent must be unequivocal and specific, and freely and intelligently given. *Royer,* 460 U.S. at 497, 103 S.Ct. at 1324; *Soto,* 988 F.2d at 1557–58. Merely because a person is detained or in custody does not preclude voluntary consent. *Royer,* 460 U.S. at 501, 103 S.Ct. at 1326 (investigative detention); *Soto,* 988 F.2d at 1557–58 (same, citing *Manuel,* 791 F.Supp. 265, 270); *United States v. Watson,* 423 U.S. 411, 424–25, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976) (custody); *United States v. Rodri-guez–Garcia,* 983 F.2d 1563, 1567 (10th Cir. 1993) (same).

■ The district court applied the correct legal standards and found that consent was voluntary, relying on several factors. *Manuel,* 791 F.Supp. at 270. The officers were in plain clothes with weapons concealed, the encounter was brief and occurred on an open, public street. Prior to consenting to the search of his person, Mr. Manuel consented to the search of his bag, but would not consent to the search of the wrapped package. According to the district court, Mr. Manuel was thus cognizant of his right to refuse consent. *Id.* The district court commented that Mr. Manuel experienced nothing more coercive than two officers indicating that they suspected that the package contained illegal drugs. In the absence of any

overt coercion during an investigative detention, however, a stated suspicion does not render consent involuntary. *See Soto,* 988 F.2d at 1557–58.

Mr. Manuel argues that while he initially may have believed he could refuse consent, the repeated requests for consent, the presence of more than one officer, and the failure to be advised of his right to refuse consent caused him to break down and allow the officers to search his person. We believe that the failure to advise Mr. Manuel of his right to refuse consent, while a factor to be considered, is not determinative on the consent issue. *See INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); *Schneckloth,* 412 U.S. at 231–34, 93 S.Ct. at 2049–51. Moreover, in the absence of any evidence to the contrary, the district court's finding that Mr. Manuel was aware of his right to refuse consent is supported by his steadfast exercise of that right with respect to the Christmas package. The repeated requests for consent pertained to the package, not Mr. Manuel's person. Based on the totality of the circumstances, the district court's finding that Mr. Manuel consented to a search of his person is not clearly erroneous.

■ Mr. Manuel next claims that he was denied equal protection because he was approached by the officers solely because of his race. Quite apart from the Fourth Amendment analysis, *see Bostick,* —— U.S. at —— n. 1, 111 S.Ct. at 2390 n. 1 (Marshall, J., dissenting), we agree with Mr. Manuel that selecting persons for consensual interviews based solely on race is deserving of strict scrutiny, and raises serious equal protection concerns. *See Freeman v. Pitts,* —— U.S. ——, ——, 112 S.Ct. 1430, 1443, 118 L.Ed.2d 108 (1992) (principal wrong of school segregation was the "injuries and stigma inflicted upon the race disfavored by the violation"); *United States v. Taylor,* 956 F.2d 572, 580–583 (6th Cir.) (Keith, J., dissenting), *cert. denied,* —— U.S. ——, 113 S.Ct. 404, 121 L.Ed.2d 330 (1992). However, on this record, we simply lack an adequate basis to consider this claim. *See Taylor,* 956 F.2d at 578–79. The district court was presented with this argument at the close of the sup-

pression hearing, I R. 134–35, and did not address it in its order. It does not appear that Defendant sought a ruling on this ground.

 The record simply does not support the version of the facts claimed by Mr. Manuel on appeal. Though certainly not dispositive, the officers testified that race was not a factor. The only testimony before us establishes nondiscriminatory reasons (even if based on speculation) for initiating a consensual encounter with Mr. Manuel. Just as in selective prosecution claims, *see United States v. Salazar,* 720 F.2d 1482, 1487 (10th Cir.1983), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *United States v. Amon,* 669 F.2d 1351, 1356–57 (10th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), something more than speculation and conjecture is necessary for proof. The record does not address any discriminatory policy, let alone support the assertion that no factors, other than skin color, distinguished Mr. Manuel from the white males not selected for consensual encounters. *See* Aplt.Br. at 11.

 The final point raised by Mr. Manual is that the warrantless search conducted after his arrest (which disclosed the contraband in the package) was improper. Defendant's counsel and the district court both inquired about this warrantless search. *See* I R. 57–58; 69–73; 126–27. The officers asserted that the package was opened as part of a search incident to an arrest or as part of an inventory search. *See Illinois v. Lafayette,* 462 U.S. 640, 648, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983) (inventory search); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). In arguments before the district court, the government reminded the district court that the scope of the post-arrest search was not raised in defendant's suppression motion, a representation we accept. I R. 129.

On appeal, Mr. Manuel argues that the inventory search was improper because a proper inventory search should be conducted at the station house and this one was done on the street. He further argues that the package was never in his immediate control be-

cause the officers had never returned the package. We decline to address these issues because they were not raised below (but easily could have been) and district court findings which would be essential are absent. *See* Fed.R.Crim.P. 12(b) & (f); *United States v. DeWitt,* 946 F.2d 1497, 1502 (10th Cir. 1991), *cert. denied, Rison v. United States,* — U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992).

AFFIRMED.