UNITED STATES of America, Plaintiff,

v.

Lloyd Steven GRISSOM, Defendant.

Civ. A. No. 93–20009–01.

United States District Court,
D. Kansas.

June 4, 1993.

James E. Flory, Asst. U.S. Atty., Kansas City, KS, for plaintiff.

Mark A. Thornhill, Aaron Johnson, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on defendant Lloyd Steven Grissom's Fed.R.Crim.P. 12(b)(3) motion (Doc. 14) to suppress evidence. Defendant moves the court to suppress certain items that were seized from his house and certain statements allegedly made to agents of the Federal Bureau of Investigation (FBI). The government opposes (Doc. 19) defendant's motion. Commencing May 10, 1993, and concluding May 11, 1993, the court conducted an evidentiary hearing regarding the motion. Having considered the evidence adduced at the hearing, the parties' legal memoranda, and the arguments of counsel, the court is prepared to rule. For the reasons stated more fully below, defendant's motion to suppress is overruled.

### I. BACKGROUND

During the hearing the court heard the testimony of six persons. Defendant, his wife, Rhonda Grissom, and his attorney, John Weisenfels, testified for the defendant. Thomas Price, Keith Bryars, and Michael Gillispie, special agents with the FBI, testified for the government. All testified to the facts underlying the issues before the court. The testimony of the witnesses called by defendant, particularly that of defendant, himself, and to a lesser degree that of other defense witnesses, was in some instances diametrically opposed to the version of events

given by the government's agents. The testimony of defendant and the agents conflicted regarding the sequence of events surrounding the seizure at issue. The testimony also conflicted concerning the demeanor and conduct of the government's agents—the issue being whether or not they intimidated defendant and coerced him into consenting to the seizure. As discussed in more detail below, the court concludes that the version of events related by the government's agents is credible. Based on the credible evidence adduced at the hearing, and as required by Fed.R.Crim.P. 12(e), the court makes the following findings of fact:

On the morning of May 20, 1992, supervisory special agent Thomas Price dispatched special agents Keith Bryars and Michael Gillispie to defendant Lloyd Steven Grissom's house, located at 7224 West 97th Street, Overland Park, Kansas. Price dispatched Bryars and Gillispie to investigate an alleged burglary that involved the transportation of stolen goods across state lines. During the evening of May 19, 1992, defendant's former employer, Grissom Stokes and Company, Inc., had been burglarized. Because a number of defendant's personal effects had been taken along with business records, computers, and other items, defendant was suspected in the burglary.[1] Bryars and Gillispie arrived at defendant's house between 8:30 and 9:00 a.m.

Upon arrival at defendant's house, Bryars and Gillispie knocked on the front door. Defendant, who was alone in the house at the time, answered. Defendant, who knew both Bryars and Gillispie personally because of his cooperation in another FBI investigation, invited the agents into his house. Defendant ushered Bryars and Gillispie into a first floor living room. The agents took seats on a sofa and defendant sat across from them. Bryars and Gillispie began to question defendant.

Prompted by Bryars' and Gillispie's questioning, defendant began talking in general about his business. He told the agents that the business had experienced severe cash-flow problems, but that he was able to get around that due to a Small Business Administration loan his company had obtained in connection with a construction project at Truman Medical Center. As the interview progressed, defendant admitted that he had been fired the previous day. After being questioned further, defendant also admitted that he had burglarized the Riverside, Missouri, offices of Grissom Stokes and Company, Inc. Defendant made those admissions at approximately 9:40 a.m.

Bryars and Gillispie then questioned defendant concerning the items he had taken. Defendant described the items in some detail. He had taken two computers and computer paraphernalia, a Fax machine, and several boxes of business records. He stated that several of the items belonged to him. The agents asked defendant where the items were located. Defendant indicated that the items were located in an upstairs bedroom. Bryars and Gillispie asked defendant if he would show them the stolen items. Defendant agreed and escorted the officers upstairs. Bryars and Gillispie inspected the items and determined that they matched the description of the missing items. After viewing the stolen goods, the agents returned with defendant to the first floor living room.

Upon their return to the living room, the agents continued to question defendant. During this portion of the interview, defendant admitted to having doctored the company's payroll records to avoid paying benefits to labor unions and withholding taxes to the Internal Revenue Service. Defendant said he had done this to combat the company's cash-flow problems. Defendant also stated that he had created a false set of payroll records. He stated that he had taken those records from Grissom Stokes and Company, Inc., at another time and that they were located in another area of the house. He later showed those documents to Bryars and Gillispie.

At approximately 10:30 a.m., Bryars and Gillispie concluded the interview. The agents then asked defendant if they could take the items from the upstairs bedroom. Defendant agreed. Defendant then asked the agents what he could do for them, presumably to assist in other ongoing investiga-

---

1. It is not clear to the court why the FBI became involved in the investigation of the burglary.

tions. The agents replied that there was nothing that he could do. While the agents were loading the items into their car, defendant became frightened and called his attorney, John Weisenfels. After conferring with his attorney, defendant asked the agents if they had a warrant and if they were going to arrest him. The agents said that they did not have a warrant and that they did not know whether they were going to arrest him.[2] Defendant also asked the agents for a receipt listing the items that they had seized.

After loading the last item into their car, Bryars prepared an inventory of the seized items. The inventory stated that: "The following items were voluntarily provided to Special Agents Michael R. Gillispie and D. Keith Bryars," and listed the items taken. Bryars and Gillispie then left defendant's home to make copies of the inventory. Once they had finished, the agents returned to defendant's house. Defendant, who was once again talking to his attorney, admitted them again into his house. Upon his attorney's advice, defendant refused to sign the inventory. The agents then signed the inventory, wrote that defendant refused to sign it, dated it, and wrote that it was then 12:39 p.m.

Bryars and Gillispie then left defendant's house. While they were departing, defendant's wife, Rhonda Grissom, returned home. She asked Bryars and Gillispie several questions to which they provided answers. The agents then left the premises, taking some of the seized items to the Riverside Police Department and others to Grissom Stokes and Company, Inc.. As of this time, defendant has not been charged with burglary.

The credible evidence also disclosed the following additional facts: (1) Defendant was not given a *Miranda* warning; (2) The agents had neither a search warrant concerning the items allegedly stolen nor an arrest warrant concerning defendant; and (3) During the course of their interrogation of defendant, the agents never told defendant that they were going to arrest him or that he was not free to leave the premises.

## II. DISCUSSION

Defendant contends that the search of his home was effected without a warrant and without his consent in violation of the Fourth Amendment. On that ground, defendant moves the court to suppress the items seized from his home as the fruit of an illegal search. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Defendant also contends that any statements that he may have made to the special agents were coerced during a custodial interrogation without his being informed of his *Miranda* rights in violation of the Fifth Amendment. On that ground, defendant moves the court to suppress any statements he may have made to the special agents. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court will address the contentions separately.

### A. The Motion to Suppress the Seized Items

■ The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated...." One of the principal evils against which the Fourth Amendment is directed is the government's physical entry of one's home. *See United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). It cannot be disputed that a person is entitled to privacy in his or her home. *Steagald v. United States,* 451 U.S. 204, 212, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981). Consequently, the court concludes that defendant clearly had a legitimate expectation of privacy in his home entitling him to protection of the Fourth Amendment.

■ Having determined that defendant possessed a legitimate expectation of privacy in his home, the court must determine whether or not the search and seizure involved in this case was reasonable. The Fourth Amendment does not protect against all searches and seizures, but only against

**2.** After conferring with an Assistant United States Attorney, the agents decided not to arrest defendant that morning.

*unreasonable* searches and seizures. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). The Supreme Court has long held that a warrantless search is *"per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Accordingly, government agents cannot enter a person's home without a warrant absent exigent circumstances or consent. *Steagald,* 451 U.S. at 212, 101 S.Ct. at 1647. Because it is conceded that no warrant authorized the government's entry into or search of defendant's home, the burden is on the government to prove that its entry into and search of defendant's home falls within one of the recognized exceptions to the warrant requirement. *See, e.g., Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).[3]

■ The court concludes that the government has sustained its burden in this instance with respect to its entry into defendant's house. The credible evidence disclosed that defendant knew special agents Bryars and Gillispie, having met with them approximately fifteen times in connection with a separate FBI investigation. Several of those meetings occurred at defendant's home. Both Bryars and Gillispie had been to defendant's home previously. The court therefore finds it credible that defendant invited the agents into his home. Accordingly, the court finds that defendant consented to the agents' entry into his home.

■ The court also concludes that the government sustained its burden with respect to its search of defendant's home. The credible evidence disclosed that defendant admitted to having burglarized Grissom and Stokes Company, Inc. on the previous evening. The credible evidence also disclosed that defendant showed the stolen items to Bryars and Gillispie. The credible evidence further disclosed that defendant agreed to allow the agents to take the items with them when they left. The court therefore concludes that

the search and seizure were effected upon defendant's consent. The court concludes further that if defendant later revoked that consent—after conferring with his attorney— that that revocation was too late in that it occurred after the agents had already seized the stolen items.

Accordingly, the court concludes that the government sustained its burden by showing by the greater weight of the credible evidence that defendant consented to the government's entry into his house, to the search of his house, and to the seizure of the items in question.

■ Having determined that defendant consented to the search and seizure, the court must make an additional determination concerning the voluntariness of that consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consent is valid only if it is given voluntarily. *United States v. Evans,* 937 F.2d 1534, 1537 (10th Cir.1991). Because it is a question of fact, the court determines whether consent is voluntarily given under the totality of the circumstances, *id.* at 1538, using a three-tiered analysis:

> First, there must be clear and positive testimony that the consent was unequivocal and specific, and freely and intelligently given. Second, the Government must establish that consent was given without duress or coercion. Finally, [the court] evaluate[s] the first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.

*Id.; see United States v. Manuel,* 791 F.Supp. 265, 270 (D.Kan.1992), *aff'd,* 992 F.2d 272 (10th Cir.1993).

■ The court concludes that defendant's consent to Bryars' and Gillispie's entry into his house and to their search and seizure was voluntary. The credible evidence was that defendant admitted the agents into his house without question. The credible evidence also disclosed that he admitted to burglarizing Grissom Stokes and Company, Inc. He ad-

---

3. The government's burden is to prove the existence of one of the exceptions by a preponderance of the evidence rather than by clear and convincing evidence as defendant contends. *See United States v. Matlock,* 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242 (1974).

mitted that the missing items were in his house and agreed that the agents could take them when they left. There is no evidence that the consent to search and to seize the items was obtained with anything more coercive than the fact that Bryars and Gillispie were special agents with the FBI who had visited his house to question him about the burglary. Therefore, the court concludes that the government has established that defendant's consent was voluntary. For the reasons stated above, defendant's motion to suppress the seized items is overruled.

### B. The Motion to Suppress Statements

 The Fifth Amendment protects an individual against compelled self-incrimination. In *Miranda v. Arizona, supra,* the Supreme Court held that a custodial interrogation is so inherently coercive that extra procedural safeguards were necessary to insure protection of Fifth Amendment rights. *Id.,* 384 U.S. at 476, 86 S.Ct. at 1628. Therefore, the Supreme Court held that before a defendant's self-incriminating statements, garnered during a custodial interrogation, are admissible at trial, that defendant must be informed of certain constitutional rights. *Id.* The warning insures that any statements made to the police are not coerced.

In this case it is uncontroverted that defendant was never informed of his *Miranda* rights. However, the court concludes that any statements made by defendant should not be suppressed. Defendant produced no evidence at the hearing that would show that he made any inculpatory statements during the interrogation or, if he did, what those statements were. Because the court is unaware of what statements defendant seeks to suppress in his motion, it must deny his motion to suppress in this regard. Additionally, *Miranda* rights are triggered only by a custodial interrogation. In this case, the agents never told defendant that he could not leave. The court further finds from the credible evidence that a reasonable person would not have believed he was not free to leave or free to ask the agents to leave. Accordingly, the court concludes that defendant has failed to sustain his burden of showing that the interrogation involved was

custodial. *See United States v. Charles,* 738 F.2d 686, 692 (5th Cir.1984). The court denies the motion to suppress statements on this ground also.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion to suppress (Doc. 14) is denied.

**IT IS SO ORDERED.**