36 F.3d 1106
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Christopher Shawn BEASLEY, Defendant-Appellant.
 Nos. 94-2026, 94-2065.
 United States Court of Appeals, Tenth Circuit.
 Sept. 15, 1994.
 
 Before KELLY, SETH, and McWILLIAMS, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 Appellant, Christopher Shawn Beasley, was indicted for possession with intent to distribute fifty grams and more of cocaine base in violation of 21 U.S.C. 841(a)(1) and 21 U.S.C. 841(b)(1)(A), to which he pled not guilty. The United States District Court for the District of New Mexico held an evidentiary hearing on Appellant's motion to suppress the cocaine and denied the motion. Appellant then entered a conditional plea of guilty and was sentenced to 120 months imprisonment. This appeal follows.
 
 
 3
 Appellant was a passenger in a car traveling from Louisiana to Los Angeles, California through New Mexico. At approximately 3:00 a.m., Appellant and the driver entered a Border Patrol Checkpoint Station on I-10, outside of Las Cruces. Agent Thatcher stopped the car and asked for Appellant's and driver's places of birth, to which they answered Los Angeles. At that time, Agent Thatcher claimed that he smelled a strong odor that resembled the smell of a gym bag or dirty socks which made him suspicious. He then asked where they were traveling from and whether they were traveling with anybody else. Agent Thatcher asked if he could look in the trunk and the driver consented. In the trunk, Agent Thatcher saw a big expensive piece of luggage, two smaller bags and an ice chest. Agent Thatcher then asked if he could have a dog sniff the car and the driver consented. The dog alerted to the front seat area. Until this point, only two to two and a half minutes had elapsed. Agent Thatcher and another agent then searched the inside of the car, finding a burnt marijuana cigarette, some debris and a scale in the back seat. Agent Thatcher opened the hood and found a 9mm Uzi, wrapped in a towel, stashed in the engine. Another agent then ran a serial number check on the gun and discovered it was reported stolen from Louisiana. Appellant and the driver were then secured and read their rights. The driver asked to go to the bathroom which prompted a pat down by an agent. The agent discovered cocaine hidden in his buttocks. The agent then conducted a pat down of Appellant and discovered cocaine in his buttocks.
 
 
 4
 Appellant claims on appeal that the district court erred by not suppressing the cocaine. First, he claims that Appellant was stopped and questioned because he was black which violates his equal protection rights. Second, he argues that the continued detention for questioning was unreasonable and that the smell of body odor did not constitute suspicious circumstances to justify the checkpoint detention and further questioning beyond his place of birth. Lastly, Appellant argues that he was unreasonably detained while the trunk was searched. In reviewing a denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. United States v. Morgan, 936 F.2d 1561, 1565 (10th Cir.). We review issues involving questions of law de novo. Id. at 1565-66.
 
 
 5
 In order to prevail on an equal protection claim, Appellant must present prima facie proof of discrimination which then places the burden on the Government to overcome the allegation. United States v. Hartsfield, 976 F.2d 1349 (10th Cir.). "[S]omething more than speculation and conjecture is necessary for proof." United States v. Manuel, 992 F.2d 272, 276 (10th Cir.) (recognizing strict scrutiny analysis for consensual encounters based on race alone). "Because discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused." McCleskey v. Kemp, 481 U.S. 279, 297 (refusing to accept Baldus study as proof of discrimination in application of the death penalty).
 
 
 6
 Appellant alleges three points to support a prima facie showing of an equal protection violation based on the Border Patrol's administration of its checkpoint. First, he presents an experiment conducted by a private investigator involving two cars, each with two white men and two black men, respectively, who drove through the checkpoint. Second, he points to Agent Thatcher's comment that he suspected the Appellant and the driver of the car were traveling with another car because both cars contained black people. Last, Appellant argues that he and the driver exhibited no "general indicia of suspicion normally associated with border checkpoint stops." Aplt. Reply Brief at 2. These allegations fail to establish by "exceptionally clear proof" that Appellant was discriminated against. McCleskey, 481 U.S. at 297.
 
 
 7
 The court held that the experiment conducted by Appellant was not valid. The court seemed to focus on the fact that in the experiment, no similar smell was present. Appellant responds that "[t]he fact that the car in which the experiment occupants were in did not smell bad, as Beasley's car smelled like body odor, is irrelevant to the inquiry of the discriminatory intent, because Beasley's prima facie case was to show that he was detained longer and in more detail because he was of black skin color, rather than because his car smelled bad." Aplt. Reply Brief at 4, 5. Appellant argues that the experiment need not recreate Beasley's particular situation. He claims the experiment demonstrates a discriminatory policy that encourages agents to question blacks, but not whites.
 
 
 8
 We agree that this test does not support a presumption of discrimination and fails to establish a prima facie case. The experiment was not shown to be substantially similar to Appellant's situation nor did the experiment demonstrate a general policy of discrimination. It was precisely the strange smell that prompted the agent to ask further questions, yet this smell was lacking in both cars used in the experiment. The experiment was not comparable to Appellant's situation nor was it internally consistent or controlled. Each situation an agent is faced with at a border patrol checkpoint is unique. Even though the two experimental cars contained men of similar ages, it is unclear whether they had other similarities to each other or to Appellant's situation. Beasley allowed too many variables in his experiment for it to be valid, much less even suggestive of discriminatory intent. The time of night varied and was not recorded, the number of agents on duty and their identity were unknown, the traffic conditions were not recorded, the length of the experimental detentions were not recorded, the specific questions asked were not identified, the type of cars used were not given, nor is it clear whether the license plates were in-state plates.
 
 
 9
 Appellant's second allegation, that the agent exhibited discriminatory conduct because he believed that Appellant and the driver were traveling with another car of black people is unpersuasive. Appellant characterizes this statement as a reason why the agent stopped and questioned Appellant and the driver. That the agent may have questioned whether Appellant and the driver, traveling at 3:00 a.m. with California plates may have been traveling with another vehicle of black people with California plates, also traveling early in the morning does not rise to the level of discrimination or even an inference of discrimination.
 
 
 10
 The last link in Appellant's chain of evidence tending to support discriminatory conduct was the fact that the agent testified that neither Appellant nor the driver exhibited what Appellant classifies as "classic indicia of suspicion." Aplt. Reply Brief at 5-6. According to Appellant, such behavior would include "excessive nervousness, failure to meet eye contact, gripping the steering wheel tightly, overly friendly behavior, nice, cool, calm, and collected behavior, or general nervousness." Id. at 6. That the agent did not rely on Appellant's behavior to justify his suspicions does not give clear evidence of discrimination.
 
 
 11
 Appellant claims that the only rebuttal evidence to his prima facie case offered by the Government was the smell of body odor. We need not examine whether this was sufficient to overcome a presumption of discrimination because Appellant's evidence fell short of creating a prima facie case of an equal protection violation.
 
 
 12
 Appellant's second argument on appeal is that the only permissible inquiry was about Appellant's citizenship and that the odor did not create sufficient suspicious circumstances to justify the continued detention of Appellant. Once Appellant was stopped and questioned about his nationality at the permanent checkpoint, the agent "was entitled to question [Appellant] about suspicious circumstances." United States v. Maestas, 2 F.3d 1485, 1493 (10th Cir.). Once the agent stopped and asked proper immigration questions, he smelled an odor that triggered suspicion that Appellant was carrying contraband. "The Fourth Amendment does not require police officers to close their eyes to suspicious circumstances." United States v. Rascon-Ortiz, 994 F.2d 749, 753 (10th Cir.) (quoting United States v. Johnson, 895 F.2d 693, 696 (10th Cir.)). He then asked for and was given consent to search the trunk and to allow a dog sniff. From this point on, the agent's actions were supported by probable cause. The dog alerted, and marijuana and an illegal gun were found resulting in the detention of Appellant and the driver and the pat down search that revealed cocaine.
 
 
 13
 Lastly, Appellant argues that he was unlawfully detained while the officers searched the trunk because he did not consent. The detention until permission was given for a dog sniff lasted approximately two and a half minutes. This is clearly brief and permissible under Rascon-Ortiz since the agent was merely investigating his reasonable suspicions that the driver and Appellant may be involved in transporting contraband. Appellant was not restrained until a stolen Uzi was found in the engine, obviously probable cause to detain Appellant.
 
 
 14
 Appellant failed to present a prima facie case of discrimination. Additionally, the district court did not err in denying Appellant's motion to suppress since we find that the agent had sufficient suspicious circumstances to justify continued questioning of Appellant and that consent was then given for a dog sniff which gave rise to probable cause to arrest Appellant.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470