**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 7, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WARREN RIVERA,

    Defendant - Appellant.

No. 13-2033

(D.C. No. 1:11-CR-01204-LH-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **EBEL** and **KELLY**, Circuit Judges.

---

This is a direct appeal following Warren Rivera's conviction of being a

felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and

924(a)(2).  Rivera appeals the district court's denial of his request to impeach a

witness, and the district court's giving of an <u>Allen</u> instruction[1] over his objection.

We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] <u>Allen v. United States</u>, 164 U.S. 492 (1896).

# I
## *The Arrest*

Warren Rivera lived in Albuquerque, New Mexico, with his girlfriend, Valentina Gonzales. On April 4, 2011, Rivera and Valentina got into an argument—one upsetting enough to prompt Valentina to call her parents, Carlos and Lorraine Gonzalez. Carlos and Lorraine were already walking toward Rivera's apartment in order to baby-sit Valentina's daughter, but their pace accelerated to a run when Carlos received the call from a "hysterical" Valentina. R. Vol. 2, at 22. They arrived at Rivera's apartment building to find Rivera and Valentina arguing in the street. Carlos confronted Rivera. In response, Rivera produced a pistol from his waistband, pointed it at Carlos, and warned Carlos that he would kill him. Before the situation could escalate, however, Rivera grabbed Valentina and they walked to a bus stop, leaving Carlos and Lorraine behind. Lorraine immediately called the police.

Responding to the call, Officer Martin Smith drove to the bus stop, where he found Rivera and Valentina. As Officer Smith got out of his vehicle, he observed Rivera hand something to Valentina. Officer Smith drew his gun, ordered Rivera and Valentina onto the ground, and handcuffed them both. During the arrest, Officer Smith found a pistol in Valentina's waistband. Later, Valentina would testify that Rivera foisted the pistol on her when Officer Smith arrived.

## The Trial

On May 11, 2011, a grand jury returned a one-count indictment charging Rivera with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Trial commenced on October 17, 2011, and Valentina testified against Rivera. During her direct examination, Valentina denied ever being convicted of being a felon in possession of a firearm. Then, during her cross-examination, the following exchange took place between Valentina and Rivera's counsel:

> Q. Now, [the prosecutor] asked you if you have ever been convicted of being a felon with a firearm, didn't he?
>
> A. Yes.
>
> Q. Have you ever admitted being in possession of a firearm?
>
> A. Never.

R. Vol. II, at 70. This exchange became significant because neither the district court nor the prosecutor noted the distinction between the two questions.

Defense counsel promptly sought to impeach Valentina with a copy of a New Mexico state court document titled "Probation Violation Admission Agreement," which was signed by Valentina, and in which Valentina admitted to having possessed a firearm. The document stated the following:

> **Plea:** The defendant agrees to Admit her Violation of Probation to the following offense(s):
>
> Standard Condition 1: State Laws: in that Probationer was arrested

3

on April 4, 2011 in possession of a black hand gun sticking out her pants in plain view, in violation of the terms and conditions of her probation and in violation of State Law

R. Vol. I, pt. 1, at 203.

The prosecutor objected to defense counsel's use of the document, arguing that it did not "constitute[] an admission or appropriate impeachment evidence under [Rule] 609."[2]  R. Vol. II, at 70.  Defense counsel responded, "Your Honor, this is not 609 stuff.  This is basically she told [the prosecutor] that she had never been convicted, and then I asked her if she ever admitted having possessed a

---

[2] **Rule 609. Impeachment by Evidence of a Criminal Conviction**

> **(a) In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> >
> > > **(A)** must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> > >
> > > **(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
> >
> > **(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.

Fed. R. Evid. 609(a).

4

firearm, she said no."  Id.

At first, the district court sustained the prosecutor's objection on the basis that the document did not constitute a sworn statement.[3]  Later, however, after further argument from both sides, the court again sustained the prosecutor's objection, but this time on the basis that the document did not constitute an admission that Valentina had been convicted of being a felon in possession of a firearm.  In other words, the court did not note the distinction between (1) Valentina's denial that she had been *convicted* of being a felon in possession of a firearm, and (2) Valentina's denial that she had ever *admitted* to possessing a firearm.  As a result, defense counsel was unable to impeach Valentina with her prior inconsistent statement.

### *The* Allen *Instruction*

The jury began its deliberations the next morning, October 18, 2011, at 10:14 a.m.  At 11:40 a.m, the district court received the following note from the jury, which was read to the parties: "We are not unanimous in our verdict, and it is very unlikely that we will agree."  Supp. R. Vol. II, at 38.  Then the court announced its intention to give the Allen instruction found in the Tenth Circuit pattern jury instructions.  10th Cir. Pattern Crim. Jury Instr. 1.42 (2011).  Defense counsel objected, arguing that the instruction is "far too coercive" and "puts too

---

[3] The district court did not realize until later that Valentina had signed the document.  See id. at 80 (the court stating, when shown the document again, "I didn't notice that.  She signed it?").

5

much pressure to try to make the jury come to some sort of decision when obviously they can't do it of their own free will." Id. The court replied, "[i]t is not obvious at all. They have only had an hour." Id. The court also stated that the note "doesn't say that they are firmly deadlocked." Id. at 39. Therefore, the court overruled the objection and instructed the jury as follows:

> I have received the note from the foreman regarding your difficulty in reaching a verdict. I will give you another instruction at this time.
>
> Members of the jury, I'm going to ask that you return to the jury room and deliberate further. I realize that you are having some difficulty reaching a unanimous agreement, but that is not unusual. Sometimes, after further discussion, jurors are able to work out their differences and agree.
>
> This is an important case. If you should fail to agree upon a verdict, the case is left open and must be tried again. Obviously, another trial would require the parties to make another large investment of time and effort, and there is no reason to believe that this case can be tried again by either side better or more exhaustively than it has been tried before you.
>
> You are reminded that the defendant is presumed innocent, and that the government, not the defendant, has the burden of proof, and it must prove the defendant guilty beyond a reasonable doubt.
>
> Those of you . . . who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourself if the evidence is really convincing enough given that other members of the jury are not convinced. Those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one given that other members of the jury do not share your doubt. In short, every individual juror should reconsider his or her views.
>
> It is your duty as jurors to consult with one another and deliberate

6

with a view toward reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself , but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

What I have said is not meant to rush or pressure you into agreeing on a verdict. Take as much time as you need to discuss things. There is no hurry.

I will ask now that you retire again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions I have previously given you.

My clerk will have a few copies of this instruction to take with you into the jury room. You're excused.

Id. at 39-41. This was a "modified" Allen instruction, which "differs from a traditional Allen charge in that the court asks each juror, rather than only those in the minority, to carefully reconsider their views." Gilbert v. Mullin, 302 F.3d 1166, 1174 (10th Cir. 2002).

The jury resumed deliberations at 11:49 a.m. At 2:01 p.m., the court advised the parties that the jury had reached a verdict.[4] The jury found Rivera guilty of being a felon in possession of a firearm.

**II**

On appeal, Rivera contends that the district court committed two reversible

---

[4] The record presented does not indicate whether the jury broke for lunch, or continued to deliberate without a break.

errors. First, Rivera argues that his counsel should have been permitted to impeach Valentina. Second, Rivera argues that the <u>Allen</u> instruction was unduly coercive.

### *The Limitation on the Scope of Cross-Examination*

Although Rivera offers three arguments to support his contention that the district court erred by preventing his counsel from impeaching Valentina at trial, only one argument—Rule 613 impeachment—was both properly preserved below and adequately raised in his appellate brief.

To begin, Rivera waived any argument that the Probation Violation Admission Agreement should have been admitted to refresh Valentina's memory. The only mention of this argument in Rivera's opening brief is in a point-heading. This mention in passing, and without further argument in support, is insufficient to raise the argument on appeal. <u>See</u> <u>United States v. Cooper</u>, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (alteration omitted) (internal quotation marks omitted)).

Likewise, Rivera waived any argument that the district court violated Rivera's rights under the Confrontation Clause of the Sixth Amendment by not permitting Rivera to impeach Valentina with the Probation Violation Admission Agreement. Because the argument was not raised below, "we will not address the constitutional issue in the absence of a conclusion that it was plain error for the

district court to fail to raise the constitutional issue *sua sponte*." United States v. Solomon, 399 F.3d 1231, 1237-38 (10th Cir. 2005). That said, the plain error standard does not apply "where the defendant has failed to argue on appeal that the district court committed plain error in not raising the constitutional issue *sua sponte*." Id. at 1238. Because Rivera did not mention plain error in his opening brief, we deem it waived.

Rivera does, however, successfully raise the argument that he should have been allowed to impeach Valentina under Federal Rule of Evidence 613. Rule 613 reads as follows:

> **Rule 613. Witness's Prior Statement**
>
> **(a) Showing or Disclosing the Statement During Examination.** When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney.
>
> **(b) Extrinsic Evidence of a Prior Inconsistent Statement.** Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).

Fed. R. Evid. 613. "We review for abuse of discretion a district court's rulings regarding the admissibility of evidence, including evidence intended to impeach a witness." United States v. Apperson, 441 F.3d 1162, 1194 (10th Cir. 2006).

"[T]he most widely used impeachment technique is proof that the witness

9

made a pretrial statement inconsistent with her trial testimony." 1 Kenneth S. Broun et al., McCormick on Evidence § 34, at 207 (7th ed. 2013). It was for this purpose that Rivera's counsel sought to introduce the Probation Violation Admission Agreement. Missing the distinction between defense counsel's two questions, the district court ruled that Valentina's testimony was consistent with the Probation Violation Admission Agreement.

We disagree with the district court. The pertinent question was this: "Have you ever admitted being in possession of a firearm?" "Never," Valentina answered. Because the Probation Violation Admission Agreement was a signed admission by Valentina that she "was arrested on April 4, 2011 in possession of a black hand gun," the district court abused its discretion when it concluded that Valentina's present testimony was not inconsistent with her prior statement. Rivera's counsel should have been allowed to impeach Valentina with her prior inconsistent statement under Rule 613.

Nevertheless, "[a] non-constitutional error, such as the admission or exclusion of impeachment evidence, is subject to harmless error analysis." United States v. Clifton, 406 F.3d 1173, 1179 (10th Cir. 2005). "A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." Id. (alteration omitted).

With that in mind, and in light of the evidence presented at trial, we

10

conclude that the error was harmless. First and foremost, both Carlos and Lorraine Gonzalez testified that they observed Rivera holding a gun during their encounter in the street. An attack on Valentina's credibility would not change the fact that the testimony of Carlos and Lorraine was sufficient to support Rivera's conviction. In urging that the government's case rose or fell with Valentina's credibility, Rivera overlooks the testimony given by Carlos, Lorraine, and Officer Smith.

Second, the jury had already heard Officer Smith testify that as he approached he saw Rivera hand something to Valentina, and both Officer Smith and Valentina testified that the pistol was found in Valentina's waistband when she was arrested at the bus stop. As a result, the jury already knew that Valentina had "possessed" a firearm, which was the only fact Rivera's counsel intended to highlight via impeachment. By his attempted use of the Probation Violation Admission Agreement, Rivera's counsel sought to impeach Valentina's testimony by a more distant statement when her own testimony on direct established the same inconsistency. We are unpersuaded that the district court's ruling had a substantial influence on the outcome of the trial.

Third, defense counsel's "gotcha" was an objectively unimpressive attack on Valentina's credibility. Valentina likely missed the subtle distinction between the two questions during the flow of cross-examination. Further, impeachment on such a trivial point would not have had a "substantial influence" on the outcome

11

of the trial.

Therefore, although the district court abused its discretion in refusing to allow defense counsel to impeach Valentina with the Probation Violation Admission Agreement, the error was harmless.

### *The Alleged* **Allen** *Instruction Error*

After approximately an hour-and-a-half of deliberations, the jury sent a note to the court that read: "We are not unanimous in our verdict, and it is very unlikely that we will agree." Supp. R. Vol. II, at 38. In response, and over Rivera's objection, the court called the jury in and gave a modified Allen instruction (or Allen charge). See Allen v. United States, 164 U.S. 492 (1896). On appeal, Rivera contends that the Allen instruction, under these circumstances, was unduly coercive.

"An Allen charge is a supplemental instruction given to the jury and designed to encourage a divided jury to agree on a verdict." United States v. LaVallee, 439 F.3d 670, 689 (10th Cir. 2006) (internal quotation marks omitted). Notably, "a 'modified' Allen charge . . . differs from a traditional Allen charge in that the court asks each juror, rather than only those in the minority, to carefully reconsider their views." Gilbert, 302 F.3d at 1174. The district court gave a modified Allen instruction here.

We review an "Allen charge for an abuse of discretion by the district court." United States v. Cornelius, 696 F.3d 1307, 1321 (10th Cir. 2012). "[A]

12

reviewing court must look at the [Allen] charge given by the judge 'in its context and under all the circumstances.'" Gilbert, 302 F.3d at 1173 (quoting Lowenfield v. Phelps, 484 U.S. 231, 237 (1988)). "A district court may issue an Allen instruction urging deadlocked jurors to review and reconsider the evidence in the light of the views expressed by other jurors so as to avoid a mistrial, provided that the instruction does not impose such pressure on the jury such that the accuracy and integrity of the verdict becomes uncertain." Id. (alterations omitted) (internal quotation marks omitted). "When an Allen charge imposes such pressure on the jury such that the accuracy and integrity of their verdict becomes uncertain, it violates a defendant's right to due process and Sixth Amendment rights to an impartial jury trial and to a unanimous verdict." LaVallee, 439 F.3d at 689.

"In considering whether an Allen instruction was improperly coercive, we consider (1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." Cornelius, 696 F.3d at 1321 (internal quotation marks omitted). In addition to those four considerations, our case law reveals a number of more specific ones. The instruction should not be directed only to the jurors in the minority. United States v. Arney, 248 F.3d 984, 988 (10th Cir. 2001) ("By being directed at all jurors rather than only those holding the minority view, a modified Allen charge reduces the possibility of

13

coercion."). The instruction should emphasize that "no jurors should surrender his or her conscientious convictions." Id. at 988 (internal quotation marks omitted); see United States v. Alcorn, 329 F.3d 759, 767 (10th Cir. 2003) (upholding an instruction that "contained the cautionary language to each juror not to 'surrender your honest conviction as to the weight or effect of the evidence,' but . . . did not contain the embellishments we have found problematic in prior cases." (citing United States v. McElhiney, 275 F.3d 928, 944 (10th Cir. 2001))). The instruction should remind jurors "that the burden of proof belonged to the government, not the defendant." McElhiney, 275 F.3d at 938. And we should look with particular suspicion on verdicts returned soon after the giving of an Allen instruction, because such timing suggests the possibility of coercion. Lowenfield, 484 U.S. at 240; Arney, 248 F.3d at 990.

In view of the totality of the circumstances, the Allen instruction given here was appropriately respectful of minority jurors and their conscientious convictions. The language of the approved, modified Tenth Circuit Allen instruction is faction-neutral. The instruction cautioned the jurors not to "surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict." Supp. R. Vol. II, at 40. And it reminded the jury that "the government, not the defendant, has the burden of proof." Id. at 39.

Nor are we concerned by the length of the jury's deliberations. In this

14

uncomplicated case, the time (about two hours) between the jury receiving the Allen instruction and the jury rendering its verdict was not so short as to make us suspicious of the Allen instruction's effect. See, e.g., Arney, 248 F.3d at 990 (upholding an Allen instruction that elicited a verdict within two hours); United States v. Butler, 904 F.2d 1482, 1488 (10th Cir. 1990) (same).

While not all possible conditions were present here to mitigate the effect of the Allen instruction, when viewed in context we conclude that the instruction was not unduly coercive. Although the instruction was not given along with the initial jury instructions, as we noted in McElhiney, "this positioning of the instruction does not by itself establish coercion." 275 F.3d at 942 (citing United States v. McKinney, 822 F.2d 946, 951 (10th Cir. 1987) ("[A]lthough it is a preferred rule of procedure that an Allen instruction be given the jury at the same time as other instructions, it is *not* a *per se* rule." (emphasis in original))).

We also note that in Butler, we upheld the use of the traditional, more coercive Allen instruction, which took aim only at jurors in the minority, even where (1) the instruction was given after deliberations began, (2) the instruction was prompted by the jury sending the judge a note announcing their inability to decide, and (3) the result of the instruction was a verdict within two hours. 904 F.3d at 1487-88.

We conclude that the district court did not abuse its discretion when it gave a modified Allen instruction to the jury.

15

## III

In sum, we conclude that although the district court erred when it prevented Rivera's counsel from impeaching Valentina Gonzalez with her Probation Violation Admission Agreement, the error was harmless in light of the other evidence presented in support of the verdict.  Further, the district court did not abuse its discretion when it gave a modified <u>Allen</u> instruction to the jury.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Chief Judge

16